**STATE of Minnesota, Respondent,**

v.

**Wilbert W. PROVOST, Appellant.**

**No. C6–85–1849.**

Court of Appeals of Minnesota.

May 6, 1986.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Thomas L. Johnson, Hennepin Co.

Atty., Vernon E. Bergstrom, Chief, Appellate Section, Paul R. Jennings, Asst. Co. Atty., Minneapolis, for respondent.

William R. Kennedy, Hennepin Co. Public Defender, Peter W. Gorman, Asst. Public Defender, Minneapolis, for appellant.

Heard, considered and decided by SEDGWICK, P.J., and PARKER and FORSBERG, JJ.

## OPINION

PARKER, Judge.

Appellant Wilbert Provost appeals from a conviction for first-degree criminal sexual conduct in violation of Minn.Stat. § 609.-342, subd. 1(a) (1984), for sexually penetrating a ten-year-old girl. He challenges the use of suppressed evidence for impeachment purposes and the sufficiency of the evidence. We affirm.

## FACTS

Provost was charged with raping ten-year-old A.S. The record indicates that Provost spent the afternoon of October 28, 1984, at a bar in Minneapolis. Doris S., A.S.'s mother, was present at the bar and visited with Provost there. Doris S. gave Provost a ride home and arranged to have Shirley Waukazo, who was babysitting A.S., send dinner over to Provost. A.S. delivered the dinner to Provost's apartment around 5 p.m. A.S. testified that while in Provost's apartment, he sexually assaulted her by engaging in intercourse with her.

After the assault, A.S. left the apartment and reported to Waukazo what had happened. A.S. was quickly taken to a hospital, where a sexual assault examination was performed. Evidence admitted at trial indicated that A.S. had been sexually assaulted and that seminal fluid found on her panties could have come from Provost.

Police officers questioned A.S. briefly at the hospital and then went to Provost's home. They entered Provost's apartment without a warrant and arrested him while he was asleep on his bed. The officers seized the bedclothes and his personal clothing, including the white t-shirt he was wearing. The t-shirt had some blood stains on it.

At an omnibus hearing the trial court found no exigent circumstances existed to justify the warrantless entry and arrest. The court ordered the suppression of the evidence seized as a result of Provost's arrest, including the t-shirt. Provost's first trial ended in a mistrial when one of the jurors suffered a stroke during deliberations.[1]

At Provost's second trial, A.S. testified that she screamed during the assault and that Provost then struck her in the face, causing her nose to bleed. She further stated that Provost gave her his white t-shirt to wipe her nose.

On direct examination Provost denied sexually assaulting A.S. He was then asked, "What about the other things that she [A.S.] said you did?" Provost answered, "None of *the other things* are true" (emphasis added).

The cross examination of Provost included the following:

Q. She is lying when she said that you made her nose bleed from hitting her in the face?

A. She is lying.

   \*    \*    \*    \*    \*    \*

Q. So she made up the story about wiping the blood on her nose onto your t-shirt?

A. Everything that she said I didn't do. I didn't do those things.

On rebuttal the State introduced Provost's t-shirt. A BCA expert testified that the blood on the shirt was not Provost's and was consistent with A.S.'s blood type.

---

1. The State did not challenge the suppression ruling at the second trial and considered it to be in effect for the second trial. We therefore need not rule on whether the initial ruling became the law of the case in the second trial.

*See generally United States v. Akers,* 702 F.2d 1145 (D.C.Cir.1983) (determination on admissibility of evidence in first trial not necessarily law of case in second trial).

Provost did not request a limiting instruction concerning the t-shirt. The jury found Provost guilty, and he was sentenced to a 43-month prison term.[2]

## ISSUES

1. Did the trial court err in allowing the State to use illegally obtained evidence for impeachment purposes?

2. Did the trial court err in failing to instruct the jury on the limited use of the impeachment evidence when appellant did not request the instruction?

3. Was the evidence sufficient to sustain appellant's conviction?

## DISCUSSION

### I

█ A defendant's statements made in response to proper cross-examination reasonably suggested by the defendant's direct examination are subject to proper impeachment by the government, including impeachment by evidence that has been illegally obtained and that is inadmissible as substantive evidence of guilt in the government's direct case. *United States v. Havens*, 446 U.S. 620, 627–28, 100 S.Ct. 1912, 1916–17, 64 L.Ed.2d 559 (1980); *see also Harris v. New York*, 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971) (statements taken in violation of *Miranda* admissible to impeach direct testimony of defendant). The proper inquiry, therefore, is whether the cross-examination which elicits the statements to be impeached is "reasonably suggested by the defendant's direct examination." *Havens*, 446 U.S. at 620, 100 S.Ct. at 1913; *see also United States v. LeAmous*, 754 F.2d 795, 798 (8th Cir.1985); *State v. Morrison*, 351 N.W.2d 359 (Minn. 1984).

We think the cross-examination concerning A.S.'s bloody nose and the wiping of

her blood onto Provost's t-shirt was reasonably suggested by Provost's testimony that none of "the other things" A.S. recounted were true. This is because we have no doubt from reading the record that Provost's statement concerning "the other things" referred to A.S.'s testimony about her bloody nose. *See United States v. Palmer*, 691 F.2d 921, 922 (9th Cir.1982) (defendant's testimony that cocaine was used as an anesthetic for his dental practice implied that he did not use the drug personally; inquiry on cross-examination into defendant's personal usage was reasonably related to the direct testimony).

Thus, it was proper to impeach Provost by admitting the t-shirt along with evidence that the blood on the shirt was not his and was consistent with A.S.'s blood type.[3] We hold, therefore, that Provost "opened the door" by his attempt to contradict A.S.'s testimony and that the trial court did not err in admitting the t-shirt to impeach Provost.

### II

█ Provost argues the trial court erred in failing *sua sponte* to give an instruction limiting the use of the impeachment evidence to assessing Provost's credibility only. The general rule, however, is that failure to give a limiting instruction on the use of impeachment evidence, absent a request by counsel, is not reversible error. *See State v. Amos*, 347 N.W.2d 498, 503 (Minn.1984) (impeachment by evidence of prior convictions); Minn.R.Evid. 105.

Impeachment evidence, of prior convictions, prior statements or illegally obtained evidence, possesses widely varying characteristics and prejudicial effects. This counsels against imposing an obligation upon trial judges to give limiting instructions when none are requested. Here, for exam-

---

2. The State moved this court to strike the statement of facts and procedural history in appellant's brief as in violation of Minn.R.Civ.App.P. 128.02, subd. 1(c). We deny this motion. Provost moved to strike references in the State's brief to Provost's testimony at the first trial because the transcript of the first trial was not part of the record on appeal. We grant this motion. *See* Minn.R.Crim.P. 28.02, subd. 8.

3. While the impeachment value of the t-shirt evidence here may not be as substantial as the t-shirt evidence in *Havens*, that consideration goes to the weight of the evidence, not its admissibility.

ple, the t-shirt was not direct evidence of the rape, and the court may have been reluctant to highlight the ruling by giving an instruction that the notably competent defense counsel had not requested. *See State v. Gullekson*, 383 N.W.2d 338, 341 (Minn.Ct.App.1986) (plain error under Minn.R.Crim.P. 31.02 cannot be predicated on trial tactics). The failure to give a limiting instruction on the t-shirt evidence, when none was requested, is not reversible error. *See also Palmer*, 691 F.2d at 923 (failure to give *sua sponte* limiting instruction concerning illegally obtained impeachment evidence not reversible error).

### III

We have carefully reviewed the record and conclude that the evidence was sufficient to sustain Provost's conviction. Provost concedes that A.S. was raped by someone. A.S. stated that Provost raped her, and given her age, her testimony was remarkably consistent with her prior statements.

### DECISION

The judgment is affirmed in all respects. Affirmed.