**UNITED STATES of America, Plaintiff–Appellee,**

**v.**

**James BRANDON, Defendant–Appellant.**

**No. 87–2108.**

United States Court of Appeals, Tenth Circuit.

May 23, 1988.

William P. Earley, Asst. Federal Public Defender, Oklahoma City, Okl., for defendant-appellant.

Frank Michael Ringer, Asst. U.S. Atty. (William S. Price, U.S. Atty., with him on the brief), for plaintiff-appellee.

Before LOGAN, BARRETT and TIMBERS,[*] Circuit Judges.

LOGAN, Circuit Judge.

Defendant James Brandon appeals his conviction by a jury under 21 U.S.C. § 841(a) for knowing possession of cocaine with intent to distribute, and the enhanced sentence he received under 21 U.S.C. § 841(b)(1)(B)(ii) for a conviction involving more than 500 grams of cocaine.

Taken in the light most favorable to the government, the evidence shows that on the evening of February 7, 1987, Reginald Johnson, a cab driver, picked up defendant in Oklahoma City and took him to a motel. The next day Johnson again picked up defendant. Defendant, who had with him a large black flight bag, asked Johnson to check him into a second motel. Johnson did so, checking defendant into the Sunshine Inn paying approximately $20 defendant had given him. Returning to the Sunshine Inn later that day, Johnson found defendant very upset and paranoid. Defendant accused Johnson of bringing police to the motel room and sending someone to try to kill him. Defendant in his paranoia jumped through the motel room window and ran to the motel office, where he locked himself in the bathroom to protect himself from those he believed were trying to kill him. After the motel manager advised Johnson that he had called the police, Johnson removed from defendant's motel room a small amount of cocaine and several other items which suggested cocaine usage; he put these items in his taxi. Johnson did this, he said, to protect defendant.

When the police arrived shortly thereafter, they coaxed defendant out of the bathroom and arrested defendant and Johnson for disturbing the peace and destruction of private property. Following his arrest, defendant told the police he had a large amount of money on or at the bed in his room, and he asked the police to enter the motel room and retrieve the money. After police found no money on the bed, they lifted the mattress and found a folded towel which smelled of ether. Upon removing the towel from under the mattress, a large plastic bag containing 1000 grams of cocaine fell onto the box springs. Police also seized the black flight bag, which subsequent tests revealed to contain traces of cocaine.

A federal grand jury indicted defendant and Johnson on the charges for which defendant was convicted. Johnson pleaded guilty to reduced charges and testified at defendant's trial for the government. At the trial defendant and Johnson each denied any knowledge of the cocaine found under the mattress; the conflicts between their accounts of the events comprised a key factual issue before the jury.

On appeal, defendant makes four arguments for reversing his conviction: (1) the admission for impeachment purposes of evidence concerning defendant's black bag was improper; (2) the district court erred when it denied defendant's motion to suppress the 1000 grams of cocaine as being

---

[*] Honorable William H. Timbers, Senior United States Circuit Judge for the Second Circuit, sitting by designation.

seized outside of the scope of a consent search; (3) the evidence was insufficient to support the conviction; and (4) the use of the enhanced penalty provision of 21 U.S.C. § 841(b)(1)(B)(ii) violated defendant's constitutional rights to due process, equal protection and freedom from cruel and unusual punishments. We discuss these issues seriatim.

I

■ Defendant contends that the district court improperly admitted for impeachment purposes evidence that the black bag found in the motel room contained traces of cocaine. Specifically, defendant argues that the use at trial of this illegally seized bag [1] exceeded the scope of *United States v. Havens,* 446 U.S. 620, 100 S.Ct. 1912, 64 L.Ed.2d 559 (1980). The precise issue in *Havens* was whether otherwise inadmissible evidence could be used "to impeach a defendant's false trial testimony, given in response to proper cross-examination, where the evidence does not squarely contradict the defendant's testimony on direct examination." *Id.* at 621, 100 S.Ct. at 1913. The Court answered this in the affirmative, provided that the cross-examination of the defendant was "reasonably suggested by the defendant's direct examination...." *Id.* at 627, 100 S.Ct. at 1917.

In *Havens,* customs officers arrested John McLeroth after finding cocaine sewed into makeshift pockets in a T-shirt he was wearing when he entered the country. McLeroth implicated Havens, who was then arrested and whose luggage was seized and searched without a warrant. Officers found no drugs in Havens' luggage but did find a T-shirt from which pieces had been cut that matched the makeshift pockets on McLeroth's shirt. At trial, after McLeroth testified that Havens had assisted him in preparing the T-shirt for smuggling, Ha-

vens took the stand in his own defense and denied any involvement in these activities. On cross-examination, he was asked specifically if he assisted McLeroth in concealing the cocaine on McLeroth's person. After Havens again denied any involvement, he was asked whether he had a T-shirt in his suitcase with pieces of material cut from the shirt tail. Havens denied possessing such a T-shirt, and the government introduced the T-shirt into evidence to impeach his testimony. The Court allowed the T-shirt impeachment evidence, ruling that the government's cross-examination was "reasonably suggested" by defendant's denial on direct that he had engaged in taping or draping the cocaine around McLeroth's body:

> "This testimony could easily be understood as a denial of any connection with McLeroth's T-shirt and as a contradiction of McLeroth's testimony. Quite reasonably, it seems to us, the Government on cross-examination called attention to his answers on direct and then asked whether he had anything to do with sewing the cotton swatches on McLeroth's T-shirt. This was cross-examination growing out of Havens' direct testimony...."

*Id.* at 628, 100 S.Ct. at 1917.[2]

Applying the *Havens* test here, we hold that the cross-examination of defendant concerning the black bag was reasonably suggested by his testimony on direct examination. Defendant testified on direct that he carried a bag while in Oklahoma City and admitted that he and Johnson had smoked cocaine earlier that day in another motel room. He asserted, however, that the smoked cocaine was Johnson's and that he did not bring cocaine into his room at the Sunshine Inn, where the police found it. At the conclusion of direct examination, he denied any knowledge of the cocaine that

---

1. The government on appeal does not dispute the illegality of the seizure of this bag or its contents. The district court never directly ruled the seizure to be illegal, but ruled that its use in evidence to impeach was proper "even if it was illegally seized." III R. at 238.

2. Other circuits have applied *Havens* broadly to find cross-examination "reasonably suggested"

by direct examination. *See United States v. Grubbs,* 776 F.2d 1281, 1286–87 (5th Cir.1985); *Neely v. Israel,* 715 F.2d 1261, 1264–65 (7th Cir. 1983), *cert. denied,* 464 U.S. 1048, 104 S.Ct. 723, 79 L.Ed.2d 184 (1984); *United States v. One 1979 Porsche Coupe,* 709 F.2d 1424, 1428 (11th Cir.1983) (per curiam); *United States v. Palmer,* 691 F.2d 921, 922–23 (9th Cir.1982).

was found under the mattress. The cross-examination, which related both to whether defendant owned the bag and whether he brought cocaine into the room in the bag[3], thus was "reasonably suggested" by the direct examination and proper under *Havens.*

Defendant also argues that the government's rebuttal evidence of trace amounts of cocaine found in defendant's bag was inadmissible to impeach him because he did not make a blanket denial of ever carrying cocaine in the bag; instead, he denied only that he had used the bag to transport the 1000 grams of cocaine found in the room. Because there was no proof that the cocaine traces in the bag matched the 1000 grams seized, defendant contends that admission of the impeachment evidence unfairly prejudiced him.

A trial court has broad discretion in determining whether evidence is properly admitted for impeachment purposes. *United States v. DeGudino,* 722 F.2d 1351, 1355 (7th Cir.1983); *United States v. Burkhead,* 646 F.2d 1283, 1285 (8th Cir.), *cert. denied,* 454 U.S. 898, 102 S.Ct. 399, 70 L.Ed.2d 214 (1981); *United States v. Stahl,* 616 F.2d 30, 33 (2d Cir.1980). In exercising that discretion, the trial court should analyze whether the probative value of the evidence outweighs its potential to prejudice the defendant. *United States v. McManaman,* 606 F.2d 919, 926 (10th Cir.1979).

We hold that the district court properly exercised its discretion in the instant case. The key factual issue involved who—defendant or Johnson—was the owner of the

1000 grams of cocaine seized from the motel room. Evidence of trace amounts of cocaine in the bag was relevant both to defendant's claim that he possessed no cocaine and his assertion that the seized cocaine was not transported in his bag.

The court limited any unfair prejudice resulting from the cocaine's admission to impeach. It permitted defense counsel to cross-examine the government witnesses about the possibility that the traces of cocaine in the bag did not come from the 1000-gram package found in defendant's motel room. And defendant retook the stand to explain how the cocaine traces might have gotten in the bag while Johnson was "cooking the stuff" that they smoked earlier that day. In these circumstances, the lack of direct factual congruence between the government's questions on cross-examination and the impeaching evidence affects the weight of the evidence but does not preclude its admission. *State v. Provost,* 386 N.W.2d 341, 343 n. 3 (Minn. App.1986). *Cf. Palmer,* 691 F.2d at 922 (government was allowed to introduce illegally seized cocaine snorting tube from defendant's saddle bag to impeach defendant's statement that he had never diverted cocaine, which was ostensibly used for dental purposes, to his personal use). The court also instructed the jury to consider the evidence only for the limited purpose of impeachment.

Defendant nonetheless argues that even if the bag's admission was proper for impeachment purposes, defects in the bag's chain of custody rendered its use at trial

---

3. The following cross-examination related to the bag and whether defendant brought cocaine into the room in it:

"Q. You stated that you saw a big bag of white stuff on the table and that you never saw it before; is that right?
A. Yes.
Q. And you said that you didn't know that there was coke under the mattress.
A. No.
Q. And that wasn't your cocaine?
A. No, it wasn't.
Q. When, in fact, the cocaine that was in that room was brought in by you, was it not?
A. No, it wasn't.
Q. And, in fact, it was brought in with your —in your black bag, wasn't it?

A. No, it wasn't.

Q. Do you recognize that exhibit?
A. Yes, I do.
Q. What is that exhibit?
A. It's a black bag.
Q. Is that your black bag?
A. I assume it is. Yeah.
Q. Why don't you look inside and see if there's some things in it that might help you identify it.
A. Can I stand?
Q. Yes, please.
A. Yes.
Q. That is your black bag?
A. Yes."
III R. 221-22.

improper. Defects in the chain of custody, however, go to the weight of evidence, not its admissibility. *United States v. Drumright*, 534 F.2d 1383, 1385 (10th Cir.), *cert. denied*, 429 U.S. 960, 97 S.Ct. 385, 50 L.Ed. 2d 327 (1976). We conclude that the bag was properly used to impeach defendant's testimony, a conclusion which defendant's chain-of-custody argument does not alter.

## II

■ Defendant next asserts that the district court erred in failing to suppress the 1000 grams of cocaine found under the motel room mattress. Defendant argues that his request to the police to retrieve his money "on the bed" or "at the bed" was consent to search a limited area, and the police decision to search under the mattress by raising it exceeded the scope of defendant's consent. We disagree.

The question of whether a search remained within the boundaries of the consent given is essentially factual, to be determined from the totality of the circumstances. *United States v. Espinosa*, 782 F.2d 888, 892 (10th Cir.1986). We accept the trial court's findings unless clearly erroneous. *Id.* The district court found:

> "the search under the mattress was within the permissible scope of defendant's consent. Consent to a search to retrieve money from the bed would reasonably include a search underneath the mattress when the officers did not find the money on the bed. It was reasonable for the officers to assume that a large sum of money could have been placed under the mattress. Because the scope of the search was limited to the bed itself, it is reasonable to conclude that the scope of the actual consent was not exceeded."

I R. tab 30 at 4. We do not find this clearly erroneous.

## III

■ Defendant next asserts that his conviction under 21 U.S.C. § 841(a) for possession of cocaine with intent to distribute is invalid, in that the evidence was insufficient to show specifically that he possessed, with knowledge and the intent to distrib-

ute, the 1000 grams of cocaine found in the motel room.

Our standard for reviewing the sufficiency of evidence on criminal convictions is whether "[t]he evidence—both direct and circumstantial, together with the reasonable inferences to be drawn therefrom—is sufficient if, when taken in the light most favorable to the government, a reasonable jury could find the defendant guilty beyond a reasonable doubt." *United States v. Hooks*, 780 F.2d 1526, 1531 (10th Cir.), *cert. denied*, 475 U.S. 1128, 106 S.Ct. 1657, 90 L.Ed.2d 199 (1986). Evidence supporting the conviction "must be 'substantial; that is, it must do more than raise a mere suspicion of guilt.'" *United States v. Troutman*, 814 F.2d 1428, 1455 (10th Cir. 1987) (quoting *United States v. Ortiz*, 445 F.2d 1100, 1103 (10th Cir.) (footnote omitted), *cert. denied*, 404 U.S. 993, 92 S.Ct. 541, 30 L.Ed.2d 545 (1971)).

Viewing the evidence under this standard, we reject defendant's challenge. Defendant did not admit possession of the cocaine, of course. But significant circumstantial evidence existed, including (1) defendant's erratic behavior, which strongly suggested cocaine use; (2) the fact that the cocaine was found under a mattress in a motel room rented for defendant and which contained defendant's clothing and personal effects; and (3) defendant's request that police look for a large amount of money in the same place where they found the 1000 grams of cocaine. Intent to distribute may be inferred from the large quantity of cocaine possessed, *see Hooks*, 780 F.2d at 1532, and its ninety-three percent purity.

## IV

Finally, defendant raises two constitutional challenges to the enhanced sentencing provisions set forth in 21 U.S.C. § 841(b)(1)(B)(ii). That section provides, in relevant part:

> "In the case of a violation of subsection (a) of this section involving ... (ii) 500 grams or more of a mixture or substance containing a detectable amount of ... (II) cocaine ... such person shall be sen-

tenced to a term of imprisonment which may not be less than 5 years and not more than 40 years.... Any sentence imposed under this subparagraph shall ... include a term of supervised release of at least 4 years in addition to such term of imprisonment...."

Defendant was sentenced to imprisonment for twelve years under this section, as well as a special parole term of five years following his release from confinement and a special assessment of $50.

■ Defendant asserts that the jury's failure to make specific finding of fact that defendant possessed 500 grams or more of cocaine renders his conviction invalid under the Due Process Clause of the Fifth Amendment, including its implicit equal protection component. *See Washington v. Davis*, 426 U.S. 229, 239, 96 S.Ct. 2040, 2047, 48 L.Ed.2d 597 (1976). We disagree. The quantity possessed by the defendant is a necessary element which the government must allege and prove to obtain the greater penalty provided under § 841(b)(1)(B)(ii). *See United States v. Crockett*, 812 F.2d 626, 628–29 (10th Cir.1987) (possession of statutory minimum amount of marijuana necessary element for enhanced sentence under former § 841(b)). We hold the government has met that burden here. The indictment in this case set forth that defendant possessed approximately 1000 grams of cocaine. Thus the infirmity present in *Crockett* and *United States v. Alvarez*, 735 F.2d 461, 468 (11th Cir.1984), failure to allege in the indictment the quantity of controlled substance, is not present in this case. The government also put on unchallenged testimony of an expert witness that the cocaine found in the motel room weighed 1000 grams and was ninety-three percent pure. The specific finding of fact defendant requests is not necessary, especially in light of his complete failure to challenge the proof or the amounts stated in the indictment.

Defendant's next constitutional challenge grows out of the timing of his sentence. The sentence was imposed after October 27, 1986, when the enhanced sentencing provisions of § 841(b)(1)(B) became effec-

tive, but before the November 1, 1987 effective date of 18 U.S.C. § 3553(e), which allows a reduced sentence for defendants who provide "substantial assistance in the investigation or prosecution of another person who has committed an offense." He argues that the failure to allow him the benefit of the potential mitigative measures of the latter statute violates both equal protection and the Eighth Amendment's proportionality guaranty.

■ We find no equal protection violation. All defendants who were sentenced under § 841(b)(1)(B) from October 27, 1986, to November 1, 1987, received identical treatment under the statute. That Congress defined the sentencing provisions to allow certain other defendants a reduced sentence does not violate the equal protection rights of those in defendant's position.

■ We likewise reject defendant's proportionality argument. Defendant's twelve-year prison term is not so grossly disproportional to the crime for which he was convicted as to violate the Eighth Amendment's prohibition against cruel and unusual punishment. *Cf. Solem v. Helm*, 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983).

AFFIRMED.