**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Edward WASHINGTON,
Defendant–Appellant.**

No. 87–2294.

United States Court of Appeals,
Tenth Circuit.

Sept. 28, 1988.

Clark O. Brewster (David A. Mullon, Jr., Michael F. Kuzow, and Jennifer L. Moncrief of Brewster Shallcross & Rizley with him on the brief), Tulsa, Okl., for defendant-appellant.

John S. Morgan, Asst. U.S. Atty. (Tony M. Graham, U.S. Atty., and Susan W. Pennington, Asst. U.S. Atty. N.D. Okl., were on the brief), Tulsa, Okl., for plaintiff-appellee.

Before HOLLOWAY, Chief Judge, and BRORBY and McWILLIAMS, Circuit Judges.

McWILLIAMS, Circuit Judge.

Edward Washington, the appellant, and Larry Lee Cole, who is not an appellant, were jointly charged in a nine-count superseding indictment with various drug related offenses. In count 1 Washington and Cole were charged with conspiring with each other and "with others both known and unknown to the Grand Jury" to manufacture phencyclidine (PCP) in violation of 21 U.S.C. §§ 841(a)(1) and 846.

In count 2 Washington alone was charged with the knowing and intentional possession of piperidine with an intent to manufacture PCP "and/or having reasonable cause to believe that the piperidine would be used to manufacture PCP" in violation of 21 U.S.C. § 841(d)(1) and (2).

In count 3 Cole alone was charged with aiding, assisting and causing the furnishing of false and fraudulent material information in a report or document required to be made and kept under Subchapter I or II, Chapter 13, of the Drug Abuse Prevention and Control Act of 1970, as amended, in violation of 21 U.S.C. § 843(a)(4)(A) and 18 U.S.C. § 2.

In counts 4, 5, and 6 Cole alone was charged with using a telephone in furtherance of the commission of a drug felony, including but not limited to a conspiracy to manufacture PCP, in violation of 21 U.S.C. § 843(b). Each count was based on a different use of the telephone.

In counts 7, 8, and 9 Washington alone was charged with using a telephone in furtherance of the commission of a drug felony, including but not limited to a conspiracy to manufacture PCP, in violation of 21 U.S.C. § 843(b). Again, each of these counts was based on a separate use of the telephone.

During the course of a joint trial, the government dismissed counts 4, 5, and 6 which involved only Cole. The jury found Washington and Cole guilty on the conspiracy charge in count 1. Washington was also found guilty on counts 2, 7, 8, and 9. Cole was found not guilty on count 3.

At the close of the government's case, at the close of all the evidence, and immediately after the reading of the verdict, Washington's counsel moved for a judgment of acquittal on the ground that the evidence was legally insufficient. Fed.R. Crim.P. 29. Argument on the motion made at the close of the government's case was deferred until the sole defense witness was called.[1] At the close of all the evidence the motion was argued at length and denied. The motion made after the return of the jury's verdict was denied by the district judge in a five-page order wherein he detailed his reasons for rejecting Washington's insufficiency of the evidence argument.

Washington was thereafter sentenced to three years imprisonment on count 2, and to four years probation on counts 1, 7, 8, and 9, to commence upon completion of the three-year sentence imposed on count 2. Washington appeals his convictions and the sentences imposed thereon. Cole has not appealed.

PCP is a controlled substance. Piperidine is not a controlled substance, although a prospective purchaser must disclose certain information, which is ultimately reported to the Drug Enforcement Agency (DEA) before acquiring piperidine. 21 U.S.C. § 830; 21 C.F.R. § 1310 (1988). The fact that piperidine is not a controlled substance is at the heart of Washington's appeal.

---

**1.** Washington and Cole elected not to testify. Washington called one witness, a chemist, who testified briefly, and generally, concerning the nature and characteristics of piperidine.

Counsel's primary argument is that the evidence is legally insufficient to show that Washington conspired with anyone to manufacture PCP, and that the evidence only shows that Washington conspired with Cole and others to possess piperidine, which is not itself a criminal offense.

Piperidine is a colorless liquid which has various industrial uses, but is also a "precursor" for making PCP. One method for manufacturing PCP, called the "bucket method," involves several intermediate steps. First, sodium bisulfate and water are mixed in one container while sodium cyanide and piperidine are mixed in another. The two mixtures are then combined and allowed to set, resulting in the formation of a crystal known as piperidinocyclohexane carbonitrile (PCC). The PCC is then dried by mixing it with a solvent such as Coleman fuel. The dried PCC is then mixed with a substance called Grignard reagent, which is prepared from several easily obtained, nonscheduled chemicals. Mixing the PCC with the Grignard reagent causes a chemical reaction resulting in the formation of a PCP/cyanide complex. This "complex" is then treated with a hydrochloric acid which removes the cyanide molecule from the PCP, leaving only the final product, PCP, a controlled substance.

In December, 1986, Cole and Carl Dyer, the latter an unindicted co-conspirator, agreed that Dyer would buy a 55–gallon drum of piperidine from Tulsa Scientific Chemical Supply in Tulsa, Oklahoma, and that they would then sell the piperidine to one who would convert it to PCP.[2] It was estimated that their initial investment would yield a profit of between $40,000 to $50,000. Dyer placed an order with Tulsa Scientific Chemical Supply for the drum of piperidine and paid as a down payment the sum of $500. Prior to obtaining the piperidine, Cole introduced Washington, the appellant, to Dyer. Cole informed Dyer that Washington was "involved in the deal" and

that Washington "knew where he could get rid of the stuff at."

On January 8, 1987, Dyer traveled from his residence in Bristow, Oklahoma to Tulsa Chemical in Tulsa to pick up the 55–gallon drum of piperidine. Dyer was told that the cost of the piperidine would be $14,000. Dyer then left without the piperidine and drove to Cole's residence to pick up Cole's and Washington's share of the purchase money. Washington and Cole together gave Dyer $8,000. Dyer contributed the remaining $6,000 of the purchase price. Dyer then returned to Tulsa Chemical and, using the $8,000 given him by Cole and Washington, he paid Tulsa Chemical $14,000 in cash.[3] In return, Dyer got a 55–gallon drum containing what he believed was piperidine, but was in reality water and ammonia!

After Dyer placed the order with Tulsa Chemical for the piperidine, Tulsa Chemical contacted the Drug Enforcement Administration and informed that agency of Dyer's order. Consequently, when Dyer picked up the drum on January 8, 1987, DEA officials were monitoring Dyer's actions with hidden audio and video equipment.

Dyer loaded the drum on his truck but was stopped a short distance from Tulsa Chemical and placed under arrest. A day or so later, Dyer agreed to cooperate with the DEA in exchange for a promise that he would be only charged with a misdemeanor. Pursuant to this understanding, Dyer over the next few days placed several telephone calls to both Cole and Washington and taped the conversation. Six of the calls made to Washington were taped, and transcripts of the conversations were introduced at trial.

Additionally, on January 13, 1987, Dyer met with Washington in a parking lot in Tulsa, Oklahoma, and gave Washington a one-pint sample of piperidine. On that occasion Dyer was wearing a Nagra body

---

**2.** In November, 1986, Cole employed Dyer to purchase phenylacetic acid, the precursor to amphetamine, from Tulsa Scientific Chemical Supply for a fee of $10,000.

**3.** In the process of filling out required DEA Form 420, Dyer gave false information. This was the basis for count 3 wherein Cole was charged with causing Dyer to give false and fraudulent material information in violation of 21 U.S.C. § 843(a)(4)(A) and 18 U.S.C. § 2.

recorder. The conversation was tape recorded, and a transcript of that conversation was introduced at trial. The January 13 meeting between Washington and Dyer formed the basis for count 2.

Washington was arrested on January 26, 1987, in Bristow, Oklahoma, where Dyer met with him for the purpose of giving him two 5–gallon cans of piperidine for cash.

## I. Sufficiency of Evidence: Counts 1, 6, 7, and 8

■ Count 1 in the superseding indictment charged Washington and Cole with conspiring from November, 1986, to January 26, 1987 (the date Washington was arrested), together and with others, both known and unknown to the grand jury, to knowingly manufacture PCP. Under the heading "Means of Conspiracy" set forth in count 1, the government alleged, *inter alia,* that Washington would utilize his national trucking operation to transport piperidine from Tulsa, Oklahoma to California where the piperidine would be used to manufacture PCP, and he would then use his truck to transport PCP from California back to Tulsa, Oklahoma, for distribution in the Northern District.

Washington's primary argument in this court is that the evidence is insufficient to support the jury's verdict finding Washington guilty under count 1. Counsel argues that all the government's evidence shows is that Washington, Cole, and Dyer conspired to possess piperidine and that the evidence does not show a conspiracy to manufacture PCP, which was the crime charged in count 1. This is, in our view, too narrow a reading of the evidence.

The evidence admittedly shows, and conclusively so, that Cole and Dyer initially conspired to obtain piperidine with the intent to resell it to one who would use the piperidine to make PCP. If, hypothetically, Cole and Dyer had actually sold piperidine to one who used it to make PCP, and Cole and Dyer knew, or had reason to know, that the party to whom they sold the piperidine was going to use it to make PCP, Cole and Dyer would themselves be guilty of making PCP on an accessory theory, even though they did not themselves actually make the PCP.

After Cole and Dyer entered into a conspiracy to acquire piperidine and sell it at an inflated price to one who would use it to make PCP, Cole brought Washington into the existing conspiracy. The record shows that the reason for bringing Washington into the conspiracy was two-fold: (1) he would make a financial contribution toward the purchase price of the piperidine acquired from Tulsa Chemical; and (2) he had a potential purchaser for the piperidine who resided in California. The taped recording of Washington's conversation with Dyer in the parking lot in Tulsa, Oklahoma, on January 13, 1987, indicated that Washington not only knew that it was intended by all that the piperidine was to be used to make PCP, but also indicated that Washington knew a party in California who would make the PCP. Dyer, a government witness, also testified to that same effect.

Since the jury found Washington guilty of conspiracy, this Court must view the evidence in the light most favorable to the government. *Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680; *United States v. Hooks,* 780 F.2d 1526, 1529–31 (10th Cir.1986), *cert. denied,* 475 U.S. 1128, 106 S.Ct. 1657, 90 L.Ed.2d 199 (1986). Viewed in that light, we conclude that the evidence, both direct and circumstantial, is sufficient to support the jury's verdict on count 1.

It is agreed by counsel that if Washington's conviction on conspiracy is upheld, then the evidence is sufficient to support his conviction on counts 7, 8, and 9 which charged him with using the telephone to further the conspiracy. Conversely, it was agreed that if we reversed the conviction under count 1, the conviction of counts 7, 8, and 9 would necessarily fall. Having held that Washington's conviction under count 1 is supported by the evidence, we now hold that the evidence is sufficient to support his conviction on counts 7, 8, and 9.

## II. Sufficiency of Evidence: Count 2

■ Count 2 of the superseding indictment charged Washington with knowingly

possessing piperidine with an intent to manufacture PCP, "and/or having reasonable cause to believe" that the piperidine would be used to manufacture PCP. That charge was based on Dyer's meeting with Washington on January 13, 1987, when Dyer purportedly gave Washington a one-pint "sample" of piperidine for "testing purposes."

Counsel initially contended that there was no evidence that the one-pint "sample" given Washington by Dyer on January 13, 1987, was actually piperidine. A DEA agent testified that the sample given Washington came from a sealed one-gallon can marked "Piperidine" which was in the possession of Tulsa Chemical. The agent testified that he assisted in taking the one-pint sample from the one-gallon can and that in his opinion, based on experience, training, and education, the substance was piperidine. The fact that the remaining part of the one-gallon can remained with Tulsa Chemical does not alter the fact that the government did establish, at least *prima facie*, that the substance given Washington by Dyer on January 13, 1987, was in fact piperidine.

Counsel's primary argument as it relates to count 2 is that the evidence is insufficient to show that Washington possessed the one pint of piperidine with either an intent to manufacture PCP or reasonable cause to believe that the piperidine would be used to manufacture PCP. It is suggested that the one pint was only a "sample" to be used by Washington's "contact" to determine whether the substance was actually piperidine and whether he wanted to make further purchases. It would appear that counsel would have us believe that the sample was somehow to be tested and then discarded. The evidence shows, however, that the sample was to be tested by starting the process whereby the piperidine would be transformed into PCP, to the end that if "crystals" developed the substance would truly be piperidine. The tape recorded conversation between Washington and Dyer concerning the "needs" of Washington's California contact support the government's theory that these "crystals" would not be thrown in the wastebasket, but eventually would be used to arrive at the end product, PCP.

In short, the record overwhelmingly supports the government's theory that Washington, Cole, and Dyer intended to acquire piperidine and deliver it, at a handsome profit, to one whom they knew was going to use it to make PCP. We are in complete accord with the district court's analysis of the evidence as reflected in its order denying Washington's post-trial Fed.R.Crim.P. 29 Motion.

JUDGMENT AFFIRMED.