**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Leslie Decker YOUNG,**
**Defendant–Appellant.**

**No. 87–1843.**

United States Court of Appeals,
Tenth Circuit.

Dec. 9, 1988.
As Amended Jan. 26, 1989.

Gregory C. Diamond, Asst. U.S. Atty. (Brent D. Ward, U.S. Atty., with him on the brief), Salt Lake City, Utah, for plaintiff-appellee.

Vicki Mandell–King, Asst. Federal Public Defender (Michael G. Katz, Federal Public Defender, with her on the brief), Denver, Colo., for defendant-appellant.

Before MOORE and BALDOCK, Circuit Judges, and BOHANON, Senior District Judge.*

BOHANON, District Judge.

Defendant-appellant Leslie Decker Young (Young) was convicted of possession of laboratory equipment, precursor elements, and methamphetamines, with intent to manufacture methamphetamines on or about February 4, 1987, in violation of 21 U.S.C. 841(a)(1). On appeal, Young challenges his conviction claiming that 1) the evidence is insufficient to support a conviction, 2) there was a fatal variance between the indictment and the evidence presented, 3) a lesser included offense instruction should have been given and 4) trial counsel was ineffective in rendering assistance. We affirm.

Young's indictment arose from a January 1987, Drug Enforcement Administra-

* Honorable Luther Bohanon, Northern, Eastern and Western Districts of Oklahoma, sitting by designation.

tion (DEA) investigation of various purchases of chemicals and laboratory equipment. In January 1987, Young made two purchases from Hi–Valley Chemical and Chemshop, a lab supply shop. He purchased some pH paper and strips and some lead acetate. On both occasions, Young smelled of phenylacetic acid. Store personnel notified the DEA. The DEA began surveillance.

Young was also present when an order was placed at the Intertech Trading Co. (ITT), another firm which sells chemicals and lab equipment. Items ordered included 10 pounds of phenylacetic acid, 50 pounds of lead acetate, other chemicals, boiling flasks, adapters, condensers, plastic tubing, filter paper and beakers. The order was placed in the name of the "Grant Co." Some of the items were backordered, but later that day, two men in a truck picked up the partially filled order. A DEA agent identified the defendant as resembling one of the men. After some intermediate stops, the truck backed up on the driveway of 657 South Washington St., and stayed for about fifteen minutes. Only one of the men left the residence in the truck.

In late January, the backordered items for the Grant Co. were picked up from ITT by another person claiming to be Dan, but who actually was identified as Terry Lee Loeser. Loeser said that he was there to pick up an order for Les. Thereafter, Loeser drove to 657 South Washington St. and the DEA agents saw Young come out of the residence to meet Loeser's car. Loeser and Young opened the trunk, moved several items, and Young took a small box into his residence. Young told Loeser to park down the street. A few minutes later, Young came out of the residence carrying a plastic garbage bag which he threw into a dumpster across the street. Loeser and Young then departed the residence. The DEA agents noticed that Young was conducting countersurveillance.

DEA agents later retrieved the plastic garbage bag and sent it and the contents for lab analysis. The DEA chemist testified that methamphetamine is the product of two separate reactions, phenylacetic acid processed into phenyl–2–propanone (P2P), and then P2P processed into methamphetamine. When opened, the plastic bag had a strong odor of phenylacetic acid. The DEA chemist testified that phenylacetic acid has a strong and persistent odor that is virtually absorbed into the skin, clothing and furnishings.[1] Several wadded up filter papers had an odor of methamphetamine, and trace amounts of methamphetamine were confirmed by testing. Several of the filter papers were still moist. Also in the bag was aluminum foil with a grayish powder which was a byproduct of the manufacturing process. The powder probably contained methamphetamine at one time, but the substance had disappeared due to its volatility. Also in the bag was a plastic water jug with some obvious white powder which was methamphetamine. A dark brown, rather heavy, rocky substance was also found in the bag. This was primarily lead and lead dioxide, which represented the residue left after the production of P2P. As noted, P2P is a precursor element of methamphetamine. Some brown dirt also was in the bag. The chemist's analysis indicated that it too contained P2P. Finally, an empty bottle of lead acetate and a broken jar with a label from Intertech Trading were found.

On February 4, 1987, the Washington St. residence was searched and the defendant was arrested as he walked up. A few moments later, a small bundle of white powder was found where the defendant had been apprehended. It was 99% pure methamphetamine which had not been cut with sugar or any other substance. Upon entering the house, the DEA chemist "noticed the odors that [she] normally attached to a clandestine phenyl–2–propanone and methamphetamine laboratory." Rec. supp. vol. I at 162. These odors included phenylacetic acid overlaid with P2P. Although the chemist did not find evidence of production at that very moment, she testified that

1. A city police officer conducting surveillance noted a strong smell near the South Washington St. residence late in the evening of January 26, 1987. The smell was strongest at the residence and was the same smell that the officer detected throughout the investigation.

she noticed glassware, heating mantles, other manufacturing paraphernalia and lead acetate. She found brown oil droplets on a table which tested positive for the presence of methamphetamine and table sugar in an ashtray. Also found were a digital scale for weighing powders, a piece of paper with crystals containing methamphetamine, an oblong Pyrex dish with a byproduct which results from the manufacture of P2P, drawings which illustrate a P2P manufacturing process, a heating mantle, a resistance heater, several flasks, a condenser, a plastic funnel, tygon tubing, corks, a thermometer, and a card with an alternate formula for manufacturing P2P, a Merck index, beakers and finally sulfuric acid, commonly used in the cleanup stage of P2P manufacture.

■ In a challenge based upon the sufficiency of the evidence, we must affirm the judgment of conviction if there is record evidence which would allow a rational trier of fact to find the defendant guilty of the crime charged in the indictment beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 324, 99 S.Ct. 2781, 2791, 61 L.Ed.2d 560 (1979). Our review of the record in the light most favorable to the government convinces us that the record evidence in this case satisfies that test.

21 U.S.C. § 841(a)(1) makes it a crime to possess with intent to manufacture a controlled substance. Methamphetamine in liquid form is a Schedule II controlled substance. 21 U.S.C. § 812(a); 21 C.F.R. § 1308.12(d)(2) (1987). Methamphetamine in powder form is now a Schedule II controlled substance. *Id.* As an immediate precursor of methamphetamine, P2P is a Schedule II controlled substance. 21 U.S.C. § 811(e); 21 C.F.R. § 1308.12(g). The evidence established that the jury could find beyond a reasonable doubt that the defendant possessed all of these items in January and February of 1987.

The issue in this case is whether such possession was with the intent to manufacture methamphetamine. In these circumstances, the defendant's possession of trace amounts of P2P and methamphetamine contained in the garbage bag discarded on January 26, 1987, supports the inference that he had possessed these substances before and during their use in the production process. The jury could find beyond a reasonable doubt that the defendant intended for an entire quantity (of which the trace amounts were once a part) to be converted to methamphetamine in powder form. Stated another way, the jury could rationally view the residue as evidence of the manufacturing process at an earlier point. And at such an earlier point, the defendant intended the entire quantity (including what would become the residue and the evidence of the crime) to be manufactured into finished methamphetamine.

Likewise, the jury could find beyond a reasonable doubt that the liquid methamphetamine spilled on the table was once part of a larger quantity possessed by the defendant and destined to become finished methamphetamine. A rational jury could believe that before it was spilled, the defendant intended for the liquid methamphetamine to be further processed. At that point, the defendant would have possessed the methamphetamine intending its further manufacture. The jury also could have linked the defendant with the bag of 99% pure methamphetamine found where he was apprehended. It could have reasoned that he intended to further manufacture it by adding sugar to increase its bulk. This would be a reasonable inference given that sugar was found in an ashtray in the house and the DEA chemist's testimony about this common practice in the unlawful drug trade. Rec. supp. vol. II at 227–28.

■ Of course, this view of the evidence requires us to look at events occurring in the latter part of January and the first part of February. The date of the crime contained in the indictment is on or about February 4, 1987. We think the "on or about" language contained in the indictment is consistent with this view of the evidence. But even if the date allegation contained in the indictment is incorrect, it will not bar conviction. "Where time is not an essential element of the offense, it is sufficient to charge facts which show that the offense was committed within the stat-

utory period of limitation and in such a case, even though there be a defect in the allegation as to time, it is one of form only." *Butler v. United States,* 197 F.2d 561, 562 (10th Cir.1952) (considering indictment which charged possession of an unregistered still with intent to manufacture liquor during April 24 to August 13, 1951); *United States v. Arge,* 418 F.2d 721, 724 (10th Cir.1969); *Weatherby v. United States,* 150 F.2d 465, 467 (10th Cir.1945); 1 C. Wright, Fed.Prac. & Proc. § 125 (1982 2d ed.). It is abundantly clear that the indictment in this case, returned weeks after the crime alleged, was within the limitations period.

Defendant next argues that there was a fatal variance between the indictment and the evidence presented at trial. Specifically, the defendant maintains that the government failed to present: 1) evidence of possession of a precursor element that is also a controlled substance and 2) physical evidence capable of further or future manufacture. Defendant's view of the evidence differs from our own. The evidence showed that defendant possessed P2P, a known precursor of methamphetamine. The DEA chemist identified the P2P in the contents of the garbage bag. The evidence also showed that defendant possessed liquid methamphetamine, a controlled substance which was found on a table in the residence. The evidence concerning the production process did not require that the government produce physical evidence which was capable of further manufacture. The government is not required to present evidence from a currently operating laboratory in order to sustain a possession with intent to manufacture charge. Under these circumstances, the evidence of the residue and the byproducts of the manufacturing process was sufficient to prove the charge in the indictment. The government did not rely only on the residue and byproducts of the manufacturing charge, however. The jury was entitled to consider whether the defendant possessed a bag of pure methamphetamine when he was apprehended, intending to cut it with sugar or some other substance.

The sufficiency of an indictment is judged by whether the indictment apprises the defendant of the charges he must meet and whether the defendant would be protected against double jeopardy by a judgment on the indictment. *Russell v. United States,* 369 U.S. 749, 763–64, 82 S.Ct. 1038, 1046–47, 8 L.Ed.2d 240 (1962). The indictment in this case satisfies both tests. Defendant was charged with possession of precursor elements (controlled substances) and methamphetamine with intent to manufacture methamphetamine. This charge is sufficient to notify the defendant of the offense. Indeed, our review of the record, particularly the cross examination by defendant's counsel of the DEA chemist, convinces us that the defendant was able to prepare a defense based on the indictment. And keeping in mind that reference may be had to the entire record in a subsequent proceeding, the indictment is sufficient to protect the defendant against double jeopardy. *See id.* at 764, 82 S.Ct. at 1047.

Thus, we conclude that the evidence was sufficient for a rational trier of fact to find the defendant guilty beyond a reasonable doubt of the crime charged in the indictment. Ordinarily, a charge of possession of a controlled substance with intent to manufacture is proven with reference to contraband which is capable of further manufacture. *See, e.g., United States v. Washington,* 858 F.2d 590, 594 (1988) (possession of pint of piperdine with intent to manufacture PCP). But that means of proof is not exclusive. In this case, the evidence of manufacture is overwhelming. The jury heard expert testimony not only concerning the illicit manufacturing process, but also concerning the byproducts and residue produced by that process. The jury was free to conclude that the defendant possessed the controlled substances that would become byproducts and residues with the intent to manufacture methamphetamine. The indictment was sufficient, as was the evidence supporting the conviction.

Defendant next claims that the trial court erred in not giving a lesser included offense instruction on mere pos-

session of methamphetamine. 21 U.S.C. § 844. Under Fed.R.Crim.P. 31(c), a defendant may be entitled to a lesser offense instruction "if the evidence would permit a jury rationally to find him guilty of the lesser offense and acquit him of the greater." *Keeble v. United States*, 412 U.S. 205, 208, 93 S.Ct. 1993, 1995, 36 L.Ed.2d 844 (1973). A lesser included offense instruction is warranted if: 1) there has been a proper request, 2) the lesser included offense consists of some, but not all, of the elements of the offense charged, 3) the elements differentiating the two offenses is a matter in dispute and 4) a jury could rationally convict on the lesser offense and acquit on the greater offense. *United States v. Joe*, 831 F.2d 218, 219 (10th Cir. 1987), *cert. denied*, —— U.S. ——, 108 S.Ct. 1043, 98 L.Ed.2d 1006 (1988); *Fitzgerald v. United States*, 719 F.2d 1069, 1071 (10th Cir.1983). A defendant must establish each element to be entitled to a lesser offense instruction. *United States v. Joe*, 831 F.2d at 219.

Given the right facts, simple possession may well be a lesser included offense of possession with intent to manufacture. But here the defendant failed to request the instruction. That alone bars him from claiming error on this point. There is another reason why a lesser offense instruction was not appropriate in this case. There was a dearth of evidence that defendant was guilty of mere possession, rather than possession with intent to manufacture or manufacturing itself. *See Fitzgerald v. United States*, 719 F.2d at 1071. The acquisition and possession of laboratory equipment, chemicals and other substances, and the strong odors associated with the manufacturing process simply do not point to mere possession. Rather, the evidence supports the defendant's conviction on the possession with intent to manufacture charge.

■ Finally, defendant contends that his conviction should be reversed because of ineffective assistance of counsel. To prevail on an ineffective assistance of counsel claim, defendant first must identify "acts or omissions" of trial counsel which "show

that counsel's representation fell below an objective standard of reasonableness." *Strickland v. Washington*, 466 U.S. 668, 688, 690, 104 S.Ct. 2052, 2064, 2066 (1984). Second, a defendant must show prejudice which means demonstrating "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694, 104 S.Ct. at 2068. In resolving this issue, the reviewing court must apply "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689, 104 S.Ct. at 2065. But, if an ineffective assistance of counsel claim may be disposed of based on insufficient prejudice, the reviewing court need not further evaluate counsel's performance. *Id.* at 697, 104 S.Ct. at 2069.

Defendant claims ineffectiveness because trial counsel: 1) failed to request a lesser included offense instruction on simple possession and 2) failed to urge that there was a fatal variance between the proof offered at trial and the indictment. Defendant correctly points out that the failure to raise and preserve these issues requires a plain error standard of review. Fed.R.Crim.P. 52(b). In the above discussion, however, we rejected these points on grounds other than a failure to raise each point. Thus, even without the plain error analysis, these issues would not have been successful.

Defendant also argues that trial counsel should have moved to suppress the garbage bag and its inculpatory contents. The bag was retrieved by DEA agents from a dumpster across the street from defendant's residence. During the pendency of this appeal, however, the Supreme Court decided *California v. Greenwood*, —— U.S. ——, 108 S.Ct. 1625, 100 L.Ed.2d 30 (1988), holding that a defendant does not have a reasonable expectation of privacy "in trash left for collection in an area accessible to the public." *Id.* at 1629. This strongly suggests that any motion to suppress on this theory would not have been granted and defendant was not prejudiced by failing to raise such a motion.

■ Finally, defendant suggests that trial counsel should have filed a motion to

suppress all evidence derived from the search of defendant's residence. Unfortunately, the affidavit and search warrant were not provided with the record on appeal, nor did appellate counsel seek to supplement the record on appeal. Any discussion concerning the warrant and its effect on the ineffective assistance claim would be speculation. We decline to consider this ground. *United States v. Hart*, 729 F.2d 662, 671 (10th Cir.1984), *cert. denied*, 469 U.S. 1161, 105 S.Ct. 914, 83 L.Ed.2d 927 (1985). Based on the foregoing, we conclude that defendant has not shown the prejudice necessary to support an ineffective assistance of counsel claim.

AFFIRMED.

JOHN P. MOORE, Circuit Judge, dissenting:

I must respectfully dissent. I think the charge of possession with intent to manufacture connotes future action; and, consequently, the government is bound to prove on the date set forth in the indictment the defendant had the specific intent to manufacture and the *capacity* to manufacture. As a consequence, the "on or about" rule is inapplicable because the date is important.

My conclusion is based upon the plain English meaning of the word "intent." The word connotes a "purpose" to carry out the intended act in the future. *See Webster's Third New International Dictionary*, 1176 (unabr. ed. 1981). Thus, the effect of the indictment in this case is to charge the defendant with the possession of methamphetamine for the *purpose* of manufacturing a controlled substance. With the nature of the charge so framed, it becomes clear that evidence establishing performance of an act in the past, without more, cannot serve as proof that a person intends to perform the same act in the future. I think such an hypothesis is illogical.

The crime charged here required proof that on a specific day the defendant's purpose was to manufacture; therefore, the government at least had to prove it was *possible* for him to produce methamphetamine from the substances found in his possession. When, as here, there is no evidence that the quantity of ingredients was sufficient to permit manufacture, there is no basis for inferring an intent to manufacture. One simply cannot intend to do what one is incapable of doing, so a contrary inference is impermissible.

The specific intent to manufacture is a necessary element of the offense charged. *United States v. Pope*, 561 F.2d 663 (6th Cir.1977). Evidence that the defendant manufactured methamphetamine *prior* to the date charged is not sufficient to prove that specific intent. *See id.* at 670 (to establish a violation of § 841(a)(1), government must prove both "the possessor's awareness that he is in possession of a controlled substance," and "his intention to distribute the substance *sometime in the future*" (emphasis added)).

The reasoning employed by the majority allows the jury to look backward from the date on which the defendant was supposed to have the conjunction of intent and capacity and to reason from his prior acts he was guilty as charged. I must disagree with this view because it refuses to recognize the importance of the date contained in the charge. In my judgment, the verdict in this case is at variance with the crime for which the defendant was indicted.