**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**August 22, 2005**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

SHIRLEY MAYE ROLLOW,

      Defendant-Appellant.

No. 03-6094
(D.C. No. CR-2-08-A)
(Western District of Oklahoma)

**ORDER AND JUDGMENT**[*]

Before **HARTZ**, Circuit Judge, **McWILLIAMS**, Senior Circuit Judge, and **McCONNELL**, Circuit Judge.

In a 47-count Indictment filed in the United States District Court for the Western District of Oklahoma, Shirley Maye Rollow ("Rollow"), Norma El-Samad ("El-Samad"), Lorraine Bourassa ("Bourassa"), and Hung Nguyen ("Nguyen"), were charged with various drug and drug related crimes. From the "Introduction" section in the indictment we learn that pseudoephedrine is a listed chemical under the Controlled Substances Act and is made to be used as an over-the-counter sinus medication, but that it can also be

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

used as a primary ingredient in the manufacture of methamphetamine, a controlled substance. We further learn that because pseudoephedrine is a listed chemical, manufacturers and distributors of pseudoephedrine are required to be registered with the Drug Enforcement Administration and are further required to maintain records of their purchase and distribution of pseudoephedrine. Thus, those who seek to be distributors of pseudoephedrine must identify the customers to whom they sell pseudoephedrine. El-Samad was an owner and operator of a company named Norma's Enterprises in Oklahoma City, Oklahoma. Bourassa was an owner and operator of a company named Southwest Sales in Arlington, Texas. Rollow was an employee of both Norma's Enterprises and Southwest Sales. Nguyen was also an employee of both companies.

In the first count of the indictment, all four defendants were charged with conspiring from January 1999 to July 2001, with each other, and others, to possess and distribute pseudoephedrine, a listed chemical, knowing or having reasonable cause to believe that the pseudoephedrine would be used to manufacture methamphetamine, in violation of 21 U.S.C. § 841(c)(2). In Counts 39 through 47 Rollow was charged with "Structuring Transactions to Avoid Reporting Requirements," in violation of 31 U.S.C. §§ 5324(a)(3), and 5322(b). Collectively, those transactions were claimed to total some $50,000. The United States also sought forfeiture under 21 U.S.C. § 853.

Rollow and El-Samad were thereafter jointly tried. Bourassa had entered into a plea agreement and testified as a government witness at the trial. Nguyen, who had been

released on bail, absconded and was not tried with Rollow and El-Samad. Nguyen was later apprehended and he then entered into a plea agreement with the government. Rollow was convicted on Count 1, and Counts 39 through 47, (excepting Count 44, which was consolidated with Count 43) and was sentenced to 180 months on Count 1, and 60 months on each of the remaining counts, all to be served concurrently.[1]

At trial, it was the government's theory of the case that Rollow and the other defendants had conspired with each other, and others, to distribute pseudoephedrine "knowing or having reasonable cause to believe that the pseudoephedrine would be used to manufacture methamphetamine." It was Rollow's theory of the case that her acquisition and distribution of the pseudoephedrine was "innocent," i.e., that she did not know or have reason to know that her distributees would use the pseudoephedrine to manufacture methamphetamine, that, in fact, she thought her distributees were going to sell the pseudoephedrine as a cold remedy, and that she did not "conspire" with anyone.

At oral argument, counsel for Rollow presented two grounds for reversal: (1) the district court improperly admitted evidence showing that in June, 2001, Rollow had stored ten million pseudoephedrine tablets in Curaçao, Netherlands Antilles, which she proposed to ultimately bring into the United States, and (2) the district court erred in its sentencing of her.

---

[1]El-Samad was also convicted on Count 1 and on nine counts of structuring transactions to avoid reporting requirements. She was sentenced to 97 months on Count 1 and 60 months on each of the remaining counts, all to be served concurrently.

Rollow filed a motion *in limine* attempting to obtain an order of the court that any evidence showing that Rollow had stored ten million pseudoephedrine tablets in Curaçao would not be admitted at trial. The district court conditionally denied Rollow's motion, stating that if the government's evidence at trial was the same as represented to the court at the hearing, the testimony regarding Rollow's storing ten million pseudoephedrine tablets would be admitted at trial. In so doing, the district court stated that its order was not based on Federal Rules of Evidence 404(b), but was based on its belief that the testimony regarding the pseudoephedrine stored in Curaçao was a part and parcel of the conspiracy charged in Count 1 of the indictment. In this general connection, the court spoke as follows:

> If the evidence is developed at trial along the lines stated in Mr. Sengel's brief and presentation just heard, it would be relevant with respect to the conspiracy charge because of efforts to obtain alternate sources of the substance, pseudoephedrine. And that would not be 404(b) evidence because it's inherent in the Count One of the indictment. If that's not the way the evidence develops and we hear references to that, why, the government's in a bit of trouble..."

Additionally, the district court also spoke as follows:

> With respect to the matter of Curaçao as a source, and whether permits would be required to bring pseudoephedrine from Curaçao into the United States, there's nothing about this conspiracy that requires illegality with respect to the source. Actually, Summa is a perfectly legal source. And the offense could be committed just as easily by a lawful import from Curaçao as an unlawful import from Curaçao because all that matters is what happens when it gets here.

We find no error in the admission of testimony showing that in June, 2001, Rollow had ten million pseudoephedrine tablets in storage in Curaçao and that she was contemplating removal of those tablets to the United States. The indictment alleged a conspiracy from January, 1999, to July, 2001, and the evidence was that the Curaçao "storage" was as of June, 2001. There was evidence, as was mentioned by the district court, that the defendants' source of pseudoephedrine in Texas was "drying up," and that the defendants were looking for "alternative sources." The testimony of Charles Mustin, Lorraine Bourassa, and an audio tape recording of a telephone conversation between Rollow and one Tan Do concerning the pseudoephedrine belonging to Rollow and stored in Curaçao was sufficient to indicate, *prima facie,* that such was within the scope of the conspiracy charged in Count 1.

As for the audio tape of the telephone conversation between Rollow and Tan Do, counsel complains that because the government had allowed Tan Do to be free on bail, and he thereafter absconded, Rollow was denied her right to cross examine Tan Do. He suggests that the government conspired with Tan Do to abscond and thus to be unavailable at Rollow's trial. In that connection, there is no evidence of government misconduct, only the suggestion of counsel. The tape was of Rollow's conversation with Tan Do and consisted of statements made by Rollow against her interest concerning the possible shipping of the pseudoephedrine into the United States, through either New Orleans, or to Mexico and then to the United States. We find no error in admitting this

- 5 -

line of testimony.

In his brief, counsel asserts other grounds for reversal of Rollow's conviction, which were not mentioned at oral argument. We shall discuss those matters before considering the other matter presented at oral argument, i.e. whether the district court committed error in sentencing Rollow.

In his brief counsel argued that there is insufficient evidence to support the jury's verdicts. He seems to suggest that, because there was no government witness who could, for example, testify that he actually saw Rollow transfer pseudoephedrine to a distributee who announced then and there, and for all to hear, that he was going to convert the pseudoephedrine to methamphetamine, and then did so, Rollow could not be convicted of conspiring to distribute pseudoephedrine "knowing or having reasonable cause to believe that the pseudoephedrine would be used to manufacture methamphetamine." We do not agree with that argument. In *United States v. Washington,* 858 F.2d 590, 594 (10th Cir. 1988), a defendant who came into possession of a listed chemical but thereafter had no opportunity to actually manufacture a controlled substance was convicted of intent to manufacture because he had reasonable cause to believe it would be used to manufacture an illegal substance. *See also, United States v. Saffo*, 227 F.3d 1260, 1268 (10th Cir. 2000). The evidence, though largely circumstantial in nature, is sufficient to support the jury's verdicts. *Untied States v. Ortiz-Ortiz*, 57 F.3d 892 (10th Cir. 1995). The "circumstances" we rely on in thus holding are the inordinate amount of pseudoephedrine

involved, the false reporting to the DEA, the existence of large methamphetamine-related dump sites, witness testimony including Charles Mustin who testified that he and Rollow cut the bottoms off pseudoephedrine bottles and repackaged the pills in one gallon bags for delivery to Nevada for manufacture of methamphetamine, and much more. Given the quantity of evidence, a rational trier of fact, viewing the evidence and reasonable inferences as a whole, could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319 (1975). We find no error.

In his brief, counsel argues that Rollow is entitled to a new and a "fair trial" because counsel for El-Samad, in his closing argument, sought "to 'sabotage' Ms. Rollow's defense in an effort to place guilt squarely on Ms. Rollow," and absolve his client, El-Samad, of any wrong doing. Counsel bases this on pre-trial conversations he had with counsel for El-Samad wherein the latter allegedly agreed not to "place blame on Rollow." In any event, neither El-Samad nor Rollow sought a separate trial. Counsel for Rollow did not object to any part of El-Samad's counsel's closing argument so we examine this matter for plain error. *United States v. Bailey*, 327 F.3d 1121, 1143 (10th Cir. 2003). We have read the portions of counsel for El-Samad's argument which counsel for Rollow relies on, and find nothing therein which would require a new trial for Rollow.

Counsel, in his brief, also argues that the jury was not fully instructed on the elements necessary to show "structuring to avoid reporting requirements." There was no objection to the instructions given the jury on the prosecutor's burden of proof on the

structuring transaction issue. So, again we review for plain error. *United States v. Heckard*, 238 F.3d 1222, 1231 (10th Cir. 2001). The jury was sufficiently instructed on the matter and we find no plain error.

Counsel also asserts on appeal that Rollow was improperly sentenced by the district court. The Pre-Sentence Report set Rollow's base offense level at 30 and then recommended that her offense level be raised by two levels, because she, by testifying falsely at her trial, had "obstructed justice," and then, further increased her offense level by two more levels for her role in the conspiracy. The district court, at sentencing, agreed with the Report and raised Rollow's offense level by four levels, i.e., from 30 to 34. Such level, with Rollow's Criminal History Category of I, resulted in a guideline range of 151 to 188 months, and, as indicated, she was sentenced to 180 months. Counsel for Rollow objected to raising her offense level from 30 to 34, contending that in raising her offense level from 30 to 34 the district court violated her Sixth Amendment right to trial by jury. In this general connection, we would note that had her offense level remained at 30, with her Criminal History Category of I, the guideline range would have been imprisonment for 97 to 121 months. On appeal, counsel continues to argue that by increasing Rollow's offense level from 30 to 34, the district court violated her Sixth Amendment right to trial by jury. We agree.

While the present appeal has been pending in this Court, that matter has been resolved by the Supreme Court. *United States v. Booker-Fanfan,* 125 S. Ct. 738 (2005).

*Booker-Fanfan* governs the present appeal. *Id.* at 768-69. *See also United States v. Lott,* 310 F.3d 1231, 1233 (10th Cir. 2002).

Under *Booker-Fanfan* the district court erred in basing its sentence, in part, on an adjusted offense level of 34. The matter having been raised in the district court, we need not resort to the so-called 4-prong test for plain error. *See United States v. Gonzalez v. Huerta,* 403 F.3d 727 (10th Cir. 2005). However, Fed.R.Crim.P. 52(a) provides that such error may be disregarded by us if the error is "harmless," i.e., it does <u>not</u> affect substantial rights. The district court erred when it found both that Rollow obstructed justice and played a major role in the offense thereby sentencing her on the basis of those facts not found by a jury. *Booker-Fanfan* at 756. The government has the burden of showing that such error is harmless. In support thereof, in *United States v. Lang*, 405 F.3d 1060 at 1065 (10th Cir. 2005), we spoke as follows:

> The burden of proving that an error does not affect substantial rights is upon the "beneficiary of the error"--here, the government. If the error is of constitutional magnitude, as it is here, the government is required to prove the error was harmless beyond a reasonable doubt. The government has not asserted that the error in this case was harmless. (Citations omitted.)

The record, in our view, does not support a finding of harmless error. Rollow was sentenced to imprisonment for 180 months, when the guideline range was 97 to 121 months based only on facts supported by a jury. The sentence imposed by the district court exceeded the maximum sentence permissible under this guideline range by 59 months (4 years, 11 months). Such being the case, the error was not "harmless,"

i.e. it <u>did</u> affect "substantial rights" under Rule 52(a).  Accordingly, Rollow's conviction is affirmed.  However, her sentence is vacated and the matter is remanded to the district court with direction that she be re-sentenced in accord with *Booker-Fanfan.*

ENTERED FOR THE COURT,

Robert H. McWilliams,
Senior Circuit Judge