**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Robert L. PETTIT, Defendant–Appellant.**

No. 89–3127.

United States Court of Appeals, Tenth Circuit.

May 25, 1990.

Benjamin L. Burgess, Jr., U.S. Atty., Julie A. Robinson, Asst. U.S. Atty., Kansas City, Kan., for plaintiff-appellee.

Michael G. Katz, Federal Public Defender, Susan L. Foreman, Asst. Public Defender, Denver, Colo., for defendant-appellant.

Before MOORE and BALDOCK, Circuit Judges, and BABCOCK, District Judge.*

BABCOCK, District Judge.

Defendant-appellant, Robert L. Pettit (Mr. Pettit), was convicted by a jury for possession with intent to distribute approximately 10 grams of a mixture or substance containing cocaine base in violation of 21 U.S.C. § 841(a)(1). The sentencing judge increased Mr. Pettit's offense level under the United States Sentencing Commission Guidelines (Guidelines), finding that Mr. Pettit was an organizer, leader, manager, or supervisor of the criminal activity. Mr. Pettit appeals the trial court's denial of his motion in limine to exclude certain testimony, the trial court's denial of his motion to suppress evidence, and the trial court's upward adjustment under Guidelines § 3B1.1(c). We affirm the conviction, but reverse the sentence and remand to the district court for resentencing.

I.

For one half hour on three occasions in October and November 1988, Bureau of Alcohol, Tobacco and Firearms agents

---

* Honorable Lewis T. Babcock, United States District Judge for the District of Colorado, sitting by designation.

watched a house at 1904 North Hallock Street, Kansas City, Kansas. The house was rented to Mr. Pettit. On each occasion, the agents saw five to seven people drive up to the house, park their cars, and make an "exchange" with persons at the house. The agents' observations confirmed information they had received regarding apparent drug activity at the house. Based upon this information and surveillance, the agents opened a formal investigation in December 1988.

The agents again watched the house on December 15, 16, 19, and 20, 1988. On those days, they saw Mr. Pettit, twice wearing a grayish-blue jacket, arrive at the house between 8:50 and 9:30 a.m. and stay for a brief time. On two occasions, a man arrived with Mr. Pettit and remained at the house. On December 20, 1988, the agents noticed that after the two men arrived at the house the porch light went off. Moreover, after the men arrived, several people would stop at the house.

On December 21, 1988, in front of 1904 Hallock Street, the agents executed a federal search warrant authorizing them to search Mr. Pettit's person and vehicle. Mr. Pettit was first seen sitting in his car parked in front of the house. After identifying themselves to Mr. Pettit as agents, they took him out of the car and patted him down for weapons. They told him that they had a search warrant for his person and car. However, the agents did not show Mr. Pettit the search warrant until after the search and they did not give him a copy of the warrant. The agents found twenty-one baggies containing crack cocaine in two film canisters seized from the front pocket of the grayish-blue jacket Mr. Pettit was wearing.

When searched and arrested, Mr. Pettit said that the canisters contained film. He further stated: "Now, you didn't get those from me. You had those. Those belong to you." During the booking process, Mr. Pettit told another agent that the film canisters were in the jacket when he borrowed the jacket from his girlfriend, Roberta Hearron (Hearron).

Drug Enforcement Agent LaMere, although not offered as an expert witness, opined that while the amount of drugs seized was consistent with personal consumption, the drugs were packaged for sale.

Mr. Pettit was charged in a one count Superseding Indictment with violation of 21 U.S.C. § 841(a)(1). Following a hearing on his motion to suppress, the court made a bench ruling denying the motion. After trial to a jury the jury found Mr. Pettit guilty as charged.

Mr. Pettit filed a Motion for New Trial which was argued and denied at sentencing. On May 8, 1989, the court sentenced Mr. Pettit to 120 months to be followed by 4 years of supervised release. He was fined $5,000 and assessed $50.00.

## II.

Mr. Pettit appeals the denial of his motion in limine to exclude Kansas City Police Officer Michael Simmons' (Simmons) testimony that he had made three narcotic purchases from Hearron in March and April 1988. One sale occurred inside the house at 1904 North Hallock and two occurred in cars parked outside that address. Each time, Mr. Pettit was in the vicinity of the house and directed Simmons to Hearron when Simmons asked what was going on and if they were selling anything. However, Mr. Pettit was not present in the house or the cars when the sales occurred and Simmons never purchased narcotics directly from Mr. Pettit.

In its pretrial motion in limine, the government tendered Simmons' testimony to establish Mr. Pettit's knowledge that he possessed the crack cocaine with intent to distribute it. Defendant had denied such knowledge, possession, and intent.

Mr. Pettit contends that Simmons' testimony was irrelevant because it was 1) remote in time and dealt with Hearron's bad acts, and 2) any probative value was outweighed by its prejudicial effect under Fed. R.Evid. 403. He further asserts that the trial court's limiting instruction was insuf-

ficient to protect him from unfair prejudice. We disagree.

The trial court determined before trial both that the evidence was proper 404(b) material and that its probative value "far outweighs any possible prejudicial effect for the limited purpose of having relevancy as to intent and guilty knowledge...." Our standard of review is for abuse of discretion. *United States v. Record*, 873 F.2d 1363, 1373 (10th Cir.1989).

In *United States v. Hogue*, 827 F.2d 660, 662–663 (10th Cir.1987), we held that to be admissible under Fed.R.Evid. 404(b), the evidence:

> 1) must tend to establish intent, knowledge, motive, identity or absence of mistake or accident; 2) must also be so related to the charge that it serves to establish intent, knowledge, motive, identity or absence of mistake or accident; 3) must have real probative value, not just possible worth; and 4) must be close in time to the crime charged.

Moreover, we have previously stated that under Rule 404(b):

> [S]imilar act evidence is relevant only if the jury can reasonably conclude that the act occurred *and that the defendant was the actor.* We understand this to mean that before similar 'bad acts' may be admitted against an individual, there must be reasonable indication in the record that the defendant was in fact a party to the bad acts sought to be brought in against him. We do not believe that the relevance requirement under Rules 404(b), 402 and 104(b) can be met with respect to one defendant by introducing evidence of the bad acts of the defendant's *other* associates.

*United States v. Cardall*, 885 F.2d 656, 671 (10th Cir.1989). (Citations omitted). (Emphasis in original).

■ Here, although the sales occurred 9 months before Mr. Pettit's arrest, and although Mr. Pettit was not convicted of any crime in relation to Hearron's sales, the record shows that the sales occurred with Mr. Pettit's direction and assistance and in Mr. Pettit's car in front of his rental house. Accordingly, while Mr. Pettit was not the principal actor, the evidence establishes that Mr. Pettit was a party to the criminal activity. Simmons' testimony that Mr. Pettit directed him to Hearron for the cocaine transactions, therefore, was probative of Mr. Pettit's knowledge that crack cocaine was being sold, that he knew cocaine was in the pocket of the jacket he allegedly borrowed from Hearron, and that he intended to distribute the crack cocaine. We therefore conclude that the trial court did not abuse its discretion in denying defendant's motion in limine to exclude Simmons' testimony. Any evidence regarding Mr. Pettit's association with Hearron was developed by the defense during cross-examination only. Further, despite Mr. Pettit's assertion to the contrary, the trial court's limiting instruction when the Rule 404(b) evidence was admitted, reiterated in Instruction No. 16 of the general charge, was sufficient to protect him from unfair prejudice. *See United States v. Rivera*, 837 F.2d 906 (10th Cir.1988), *rev'd on other grounds*, 874 F.2d 754 (10th Cir.), *en banc. See also United States v. Doran*, 882 F.2d 1511, 1524–1525 (10th Cir.1989).

## III.

■ Mr. Pettit contends that the trial court erred in denying his motion to suppress evidence because the warrant was issued without probable cause. He also asserts that the search was conducted in violation of the Fourth Amendment to the United States Constitution and Fed.R. Crim.P. 41. Again, we disagree.

The Fourth Amendment provides that search warrants shall be issued only upon probable cause. Where, as here, probable cause for the issuance of a search warrant is based upon an informant's information, the proper standard for determining probable cause is the totality of the circumstances. *Massachusetts v. Upton*, 466 U.S. 727, 104 S.Ct. 2085, 80 L.Ed.2d 721 (1984); *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983).

In this case, the informant's reliability and credibility was assessed for over three months. The informant's information was

corroborated by independent law enforcement surveillance in October and November 1988, and on four days in December 1988. Furthermore, other information provided by the informant was corroborated through other law enforcement surveillance and techniques.

■ Mr. Pettit also contends that Rule 41(c)(1) was violated because the face of the warrant states that the search should be executed on or before December 20, 1988, but the search was not executed until December 21, 1988. Mr. Pettit further argues that failure to show him the search warrant before the search violated Rule 41(d).

These arguments were not raised in the trial court. Mr. Pettit testified at the hearing on the motion to suppress that he never received a copy of the search warrant. The agent testified that he did not show Mr. Pettit the warrant until after the search and arrest. However, neither Mr. Pettit's written pretrial motion to suppress nor oral argument on the pretrial motion mention noncompliance with Rule 41. There is no showing of any impediment that precluded his raising these issues in the trial court.

Issues not raised in the trial court will not be considered for the first time on appeal. *United States v. Rowe*, 565 F.2d 635 (10th Cir.1977); *United States v. Glover*, 677 F.2d 57 (10th Cir.1982). Where, as here, a party advances arguments available but not presented to the trial court, and where, as here, a party has had ample opportunity to make the point timely in the trial court, the issue will not be entertained on appeal. *United States v. Mitchell*, 783 F.2d 971, 976 (10th Cir.1986).

### IV.

■ Finally, Mr. Pettit contends that the trial court incorrectly applied Guidelines § 3B1.1. Under Guidelines § 3B1.1, the trial court gave Mr. Pettit a two level offense enhancement for being an "organizer, leader, manager, or supervisor in any criminal activity...." § 3B1.1(c). Mr. Pettit argues that the trial court failed to make findings of fact on this adjustment, thereby violating 18 U.S.C. § 3553(c). He

further contends, citing *United States v. Tetzlaff*, 896 F.2d 1071 (7th Cir.1990) as supplemental authority, that the record does not support an upward adjustment pursuant to § 3B1.1(c).

18 U.S.C. § 3553(c), as amended, directs that the court at sentencing "shall state in open court the reasons for its imposition of the particular sentence." Where, as here, we do not have a departure from the Guidelines, but instead an upward adjustment to a point still within the Guidelines, "the strict and added requirements for departure do not apply." *United States v. Beaulieu*, 900 F.2d 1531, 1535 (10th Cir. 1990); *see* 18 U.S.C. § 3553(b) and (c)(2).

In this case, the probation department recommended a two level upward adjustment on the ground that Mr. Pettit "allowed others to live in the house who used the house to conduct the sale of crack cocaine." Mr. Pettit argued at sentencing that the evidence was insufficient to justify the two level increase. The trial court overruled Mr. Pettit's objection to the recommendation and sentenced him to 120 months, within the Guideline range of 97 to 121 months. In doing so, the trial court found that "[t]he crime involves distribution of crack cocaine and from the evidence that the court heard at trial, the defendant has an aggravating role in the offense behavior." This finding is adequate under the Guidelines and 18 U.S.C. § 3553(c). *See United States v. Beaulieu, supra* at 1536.

■ Mr. Pettit's second argument is that the information before the sentencing judge did not support the judge's finding that appellant was a "leader, manager, or supervisor" of the criminal activity. Although the district court's application of the Sentencing Guidelines to the facts is reviewed under a "clearly erroneous" standard, 18 U.S.C. § 3742(e) (West Supp.1989); *United States v. Beaulieu*, 893 F.2d 1177, 1181–1182 (10th Cir.1990), where, as here, the district court draws legal conclusions with respect to the Guidelines, we review de novo. *United States v. Smith*, 888 F.2d 720 (10th Cir.1989), *cert. denied*, —— U.S.

——, 110 S.Ct. 1786, 108 L.Ed.2d 788 (1990).

Guidelines § 3B1.1 provides:

Based on the defendant's role in the *offense*, increase the offense level as follows:

(a) If the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive, increase by 4 levels.

(b) If the defendant was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive, increase by 3 levels.

(c) If the defendant was an organizer, leader, manager, or supervisor in any criminal activity other than described in (a) or (b), increase by 2 levels.

(Emphasis added).

In *United States v. Tetzlaff,* 896 F.2d at 1074, the Seventh Circuit held:

The problem with the sentence imposed by the district court is that it applied Guidelines § 3B1.1(c) to a defendant who was convicted of [an] offense that only involved himself. Guidelines § 3B1.1(c) requires the sentencing judge to look at 'the defendant's role in the *offense*' of conviction ... not his role in any relevant aggravating *conduct* in which he may have engaged. Further, the elements of the offense enhanced under Guidelines § 3B1.1(c) must include the participation of more than one person or else the district court cannot weigh the relative culpability of the parties.

(Emphasis in original).

We agree with the Seventh Circuit's conclusion that the plain language of the Guidelines § 3B1.1 requires that the sentencing court focus on the "defendant's role in the offense," rather than other criminal conduct.

Guidelines § 3B1.1(c) allows the sentencing court to increase the offense level if the defendant was an "organizer, leader, manager, or supervisor in the criminal activity." *See United States v. Rutter,* 897 F.2d 1558, 1563–1564 (10th Cir.1990). On the other hand, Guidelines § 3B1.2 allows the court to decrease the offense level if the defendant was a "minimal" or "minor" participant. *See* Guidelines § 3B1.2(a) and (b). The introductory commentary to these two sections states that "[w]hen an offense is committed by more than one participant, § 3B1.1 or § 3B1.2 (or neither) may apply." As the Seventh Circuit recognized:

The Guidelines do not otherwise provide for 'role in the offense' adjustments, except when the defendant abused a position of trust or used a special skill in committing the offense. *See* Guidelines § 3B1.3. In delimiting the 'role in the offense' adjustment in this fashion, the Sentencing Commission explicitly recognized that many offenses are committed by a single individual or by individuals of roughly equal culpability, and that 'none of them receive an adjustment under this Part.' Guidelines § 3B1.4 Commentary....

*United States v. Tetzlaff,* 896 F.2d at 1074.

Here, Mr. Pettit was convicted of possession with intent to distribute approximately 10 grams of crack cocaine. 21 U.S.C. § 841(a)(1). While the record established Mr. Pettit's extensive involvement in various drug transactions which occurred at the house he rented at 1904 Hallock Street, no drugs sales were observed at the time of or in relation to his offense of conviction. Hence, we conclude that in making its upward adjustment, the sentencing court considered defendant's role in other criminal conduct for which he was not convicted.

Accordingly, the conviction is AFFIRMED, the sentence is REVERSED, and the case REMANDED to the district court for resentencing.