967 F.2d 592
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Emilio ARRELLANO-SOTO, Abel Rodriguez-Mata, Julio Alfonso
Alvarez-Garcia, and Ana Medina Carrillo,
Defendants-Appellants.
 Nos. 91-50488, 91-50489, 91-50516 and 91-50519.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted May 6, 1992.
Decided June 10, 1992.
 
 Before ALARCON, WILLIAM A. NORRIS, and O'SCANNLAIN, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Emilio Arrellano-Soto (Arrellano), Abel Rodriguez-Mata (Rodriguez), Ana Medina-Carrillo (Medina), and Julio Alfonso Alvarez-Garcia (Alvarez) were indicted for conspiracy to distribute and distribution of heroin and cocaine. Arrellano and Rodriguez appeal from the sentences imposed after they pleaded guilty to distributing heroin on October 26, 1990 in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2, as charged in superseding informations. Medina and Alvarez appeal from the judgment entered after a jury found them guilty of several counts relating to the distribution of controlled substances. We discuss each contention and the facts pertinent thereto under separate headings. We affirm the sentence imposed against Rodriguez and the judgments of conviction as to Medina and Alvarez. As to Arrellano, we remand for resentencing with directions that the district court prepare findings regarding whether it relied on relevant conduct or solely on the offense of conviction in finding that Arrellano acted as an organizer in the offense.
 
 
 3
 A. Rodriguez's Claim of Disparate Sentencing
 
 
 4
 Rodriguez argues that because Arrellano was found to be the organizer, the district court violated 18 U.S.C. § 3553(a)(6) when it imposed identical sentences on him and Arrellano. This contention is without merit. We have previously held that a defendant cannot challenge his sentence solely based on the disparity between his sentence and the sentences given to his codefendants. United States v. Hoy, 932 F.2d 1343, 1345 (9th Cir.1991); United States v. Carpenter, 914 F.2d 1131 (9th Cir.1990). An appellant who challenges his or her sentence must show that it was imposed as a result of incorrect or inadmissible information, or an improper application of the Sentencing Guidelines. Carpenter, 914 F.2d at 1136.
 
 
 5
 Rodriguez's contention that his sentence violates the Eighth Amendment is also without merit. Rodriguez does not assert that his sentence was imposed pursuant to an incorrect application of the Sentencing Guidelines. A sentence that is within statutory limits does not violate the Eighth Amendment unless it is totally out of proportion to the severity of the crime. United States v. Klein, 860 F.2d 1489, 1496 (9th Cir.1988). The maximum sentence for distribution of heroin, a Schedule I Controlled Substance, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2, is a term of imprisonment of not more than twenty years, a fine not to exceed one million dollars, and a term of supervised release of at least three years. 21 U.S.C. § 841(b)(1)(C). Rodriguez was sentenced to imprisonment for 63 months to be followed by three years of supervised release. This sentence is not disproportionate for the crime of illegal narcotics trafficking, an offense viewed by society as among the most serious. Id. at 1497. Cf. United States v. Colbert, 894 F.2d 373 (10th Cir.), cert. denied, 110 S.Ct. 2601 (1990) (sentencing guidelines for distribution of cocaine did not violate the Eighth Amendment's prohibition against cruel and unusual punishment); United States v. Francois, 889 F.2d 1341 (4th Cir.1989), cert. denied, 110 S.Ct. 1822 (1990) (sentence which was within the Guidelines and within maximum range provided by statute was not a violation of Eighth Amendment prohibition against cruel and unusual punishment). "Outside the context of capital punishment, successful challenges to the proportionality of particular sentences have been exceedingly rare." Rummel v. Estelle, 445 U.S. 263, 272 (1980)). Rodriguez has failed to establish that his sentence violated the Eighth Amendment.
 
 
 6
 B. Refusal to Allow Medina to Call Codefendant Arrellano as a Defense Witness
 
 
 7
 Medina contends that the district court erred in prohibiting her from calling Arrellano as a witness at her second trial. Her contention is without merit. During Medina's first trial, she called Arrellano as a witness to determine whether he would exercise his Fifth Amendment privilege not to testify. Arrellano had already pleaded guilty to a superseding information, but had not yet been sentenced. Arrellano took the witness stand out of the presence of the jury and refused to answer any questions regarding his involvement in the case, invoking his Fifth Amendment privilege against self-incrimination. The trial judge declared Arrellano an unavailable witness.
 
 
 8
 During the retrial of Medina and Alvarez, counsel for Medina requested that Arrellano be brought to court again to inquire as to whether he would be willing to testify. Counsel for Medina advised the court that he had no new information indicating that Arrellano had changed his mind and would testify. The court denied Medina's motion to have Arrellano brought to court. During the trial, the court asked Medina's counsel whether Arrellano had decided to testify. Counsel stated that he had spoken to Arrellano the previous night and that Arrellano had not changed his mind. The court then ruled that it would not put Arrellano on the stand.
 
 
 9
 A trial court has the discretion to permit a witness to refuse to testify if he or she can legitimately invoke the privilege against self-incrimination as to almost every question. United States v. Tsui, 646 F.2d 365, 368 (9th Cir.1981), cert. denied, 455 U.S. 991 (1982). Arrellano still awaited sentencing at the time of the second trial and therefore retained his Fifth Amendment rights. United States v. Paris, 827 F.2d 395, 399 (9th Cir.1987) (convicted but unsentenced codefendant retains Fifth Amendment rights). He had invoked his privilege against self-incrimination at the first trial and clearly indicated before the second trial that he would do so again. "[B]ecause the trial court determined that [the witnesses] would refuse to testify if called, the court correctly ruled that [the defendant] could not call them as witnesses for the sole purpose of compelling them to invoke their Fifth Amendment privilege in front of the jury." United States v. Licavoli, 604 F.2d 613, 624 (9th Cir.1979), cert. denied, 446 U.S. 935 (1980). Under these circumstances, we conclude that the district court did not abuse its discretion in refusing to call Arrellano as a witness.
 
 
 10
 Medina argues that the district court acted inconsistently because it allowed her codefendant Alvarez to call Rodriguez as a witness at the second trial even though Rodriguez, like Arrellano, had refused to testify at the first trial. The record shows, however, that Rodriguez had agreed to testify at the second trial. Arrellano did not agree to waive his privilege against self-incrimination.
 
 C. Alvarez's Claims on Appeal
 
 11
 1. Admission of Tape Recording and Transcript Was Not Plain Error
 
 
 12
 Alvarez asserts that the admission into evidence of a tape recording, Exhibit N-11, and its transcript, Exhibit N-11-A, was unfairly prejudicial because (1) his counsel did not receive the government-prepared transcript until the first day of trial and therefore did not have time to examine it; (2) the tape was of such poor quality as to be unintelligible and incapable of accurate transcription; and (3) admission of the tape unfairly bolstered the Government's claim that Alvarez's voice was on the tape. These three contentions are without merit.
 
 
 13
 Although Alvarez's counsel received the certified transcript of tape N-11 on the first day of the second trial, Friday, March 8, 1991, he admitted that he had had the tape prior to the first trial. Alvarez's counsel stated that he had received an uncertified transcript of the tape on the Wednesday before trial. Government counsel informed the court that the court interpreter made only minor changes in the translations before certifying them. The prosecution also stated that "[t]he defendants have had the transcripts of these tapes prior to the first trial. They were prepared by the agent after the first trial. The transcript was made by the court interpreter's office." We conclude that the district court did not abuse its discretion under these circumstances. Given that defense counsel had had the tape and an uncertified translation since before the first trial, Alvarez suffered no prejudice by receiving the certified translation on the first day of the second trial. See United States v. Booker, 952 F.2d 247, 250 (9th Cir.1991) (fact that transcripts of tape were not available until the day they were used not reversible error where defense counsel was aware of existence of tapes approximately one month before trial).
 
 
 14
 Alvarez's contention that the tape was so unintelligible that its admission was plain error and its transcription necessarily inaccurate is also without merit. Defense counsel did not object at trial to the transcript's admissibility on the grounds that the tape was unintelligible or that the transcript was inaccurate. Because Alvarez's counsel did not object to the tape or transcript on the grounds he argues to this court, on appeal he must show that the admission of the evidence amounted to plain error. United States v. Krasn, 614 F.2d 1229, 1235 (9th Cir.1980) (error which was not objected to below requires reversal only if plain error). Federal Rule of Criminal Procedure 52 defines plain error as "errors or defects affecting substantial rights." We must determine whether the alleged errors are so highly prejudicial that they result in a miscarriage of justice. Id. at 1235-36. A miscarriage of justice occurs if it is highly probable that the evidence materially affected the jury's verdict. United States. v. Dixon, 562 F.2d 1138, 1143 (9th Cir.1977), cert. denied, 435 U.S. 927 (1978).
 
 
 15
 Alvarez asserts that the tape is untrustworthy because it contains "unintelligible gaps." While it is true that there are some unintelligible portions of the tape, large portions are intelligible including incriminating statements allegedly made by Alvarez. We conclude that the admission of the transcript did not affect Alvarez's substantial rights. See United States v. Rinn, 586 F.2d 113, 115 (9th Cir.1978), cert. denied, 441 U.S. 931 (1979) ("Although one tape was partly unintelligible, the unintelligible portions were not sufficient to defeat its probative value as a whole.").
 
 
 16
 Alvarez has failed to demonstrate that admission of the transcript was plain error. The court interpreter testified as to the transcription process and the accuracy of the translation. DEA Agent Bazan testified that the interpreter's translation was accurate. Alvarez argues that plain error is shown because the court interpreter testified that it was difficult to transcribe the tape because of the background noise. Alvarez has overlooked, however, the court interpreter's testimony that the transcript was accurate.
 
 
 17
 Alvarez argues that the tape and the transcription were highly prejudicial because their admission led the jury to disbelieve Alvarez's testimony that it was not his voice on the tape. This contention is frivolous. Agent Bazan testified that Alvarez's voice was on the tape. Alvarez testified that it was not his voice. The tape was one logical method of permitting the trier of fact to resolve this factual dispute. Assuming that the tape was so unintelligible that Alvarez's voice could not be heard, Alvarez could not have been prejudiced because the tape would not have corroborated agent Bazan's testimony.
 
 
 18
 2. Denial of Alvarez's Motion for Judgment of Acquittal Pursuant to F.R.Crim.P. 29
 
 
 19
 Alvarez contends that the Government failed to present sufficient evidence to support his conviction for conspiring to distribute heroin between August 28, 1990 and October 26, 1990 in violation of 21 U.S.C. § 841(a)(1), and for the knowing and intentional distribution of heroin on October 26, 1990 in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. In considering a challenge to the sufficiency of the evidence, we must determine whether, " 'after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " United States v. Floyd, 945 F.2d 1096, 1098 (9th Cir.1991), corrected, 92 DAR 1712 (1992), (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979) (emphasis in original)).
 
 
 20
 Reviewing the record in the light most favorable to the Government, we conclude that the prosecution presented sufficient evidence from which a juror could find that Alvarez participated in the conspiracy. To sustain Alvarez's conviction for conspiracy to distribute heroin, the Government has the burden of proving beyond a reasonable doubt: (1) an agreement to accomplish an illegal objective, (2) one or more acts taken in furtherance of the illegal purpose, and (3) the requisite intent necessary to commit the underlying offense. United States v. Penagos, 823 F.2d 346, 348 (9th Cir.1987). Only a slight connection to a conspiracy is necessary to convict a defendant of knowing participation in the conspiracy. United States v. Skillman, 922 F.2d 1370, 1373 (9th Cir.1990), cert. dismissed, 112 S.Ct. 353 (1991).
 
 
 21
 At trial, the following evidence was presented. A police informant, Daniel Franco, testified that on September 11, 1990, when he and agent Bazan met Arrellano outside the El Rincon Norteno Bar to negotiate the purchase of heroin with Arrellano, he saw Alvarez drive the car in which Rodriguez arrived and saw Alvarez drive Rodriguez to the site where the parties consummated the heroin transaction. Franco also testified that Alvarez attended the meeting on October 26, 1990 between agent Bazan, Arrellano, Tesorito, and Franco to finalize the negotiation of the sale of heroin and cocaine.
 
 
 22
 Franco testified that after the October 26, 1990 meeting, he went to Rodriguez's house where he saw Alvarez retrieve seven ounces of heroin from a room and give it to Rodriguez to display to Arrellano and Franco. Franco further testified that Rodriguez told Alvarez to "get the car ready and put [the heroin] where you know," and that Alvarez walked out of the residence with the heroin and was waiting at the car when Rodriguez exited the house. Alvarez then drove Rodriguez to the McDonalds parking lot where the narcotics transaction was to take place.
 
 
 23
 DEA agent Huertas testified that he saw Alvarez and Rodriguez arrive together at the October 26, 1990 meeting. Rodriguez entered the restaurant, and Alvarez stood by the door of the restaurant.
 
 
 24
 Agent Bazan testified that at the McDonalds parking lot, Arrellano directed Bazan to a car parked in the lot where Bazan would find the heroin. Bazan testified that Alvarez was sitting in the driver's seat of the car and that Alvarez and he engaged in a conversation in the car wherein Alvarez told Bazan that the heroin was in the glove compartment, opened the compartment, and pointed to the heroin. Bazan testified that Alvarez then stated that Rodriguez was "the main guy" and "[The heroin is] not mine. They're just paying me some money to drive the car." Bazan was wearing a transmitter during this conversation with Alvarez. The conversation was recorded and a transcript of that conversation was admitted into evidence over Alvarez's objections.
 
 
 25
 Alvarez stated in a post-arrest statement that he knew that the heroin was in the glove compartment and that he was going to be given an airline ticket to the Los Angeles area for driving the car.
 
 
 26
 The evidence recited above showed that Alvarez knowingly participated in negotiations for the sale of heroin and transported narcotics to the buyers. We conclude that a rational jury could have been persuaded beyond a reasonable doubt of his guilt.
 
 
 27
 Alvarez's contention that the evidence was not sufficient to sustain his conviction for distributing heroin on October 26, 1990 is without merit. As discussed above, the evidence is sufficient to show that Alvarez was a participant in the conspiracy. A co-conspirator may be found guilty of criminal acts committed by his co-conspirators in furtherance of the conspiracy, even though he or she did not personally commit the substantive crimes. Pinkerton v. United States, 328 U.S. 640, 645-48 (1946).
 
 
 28
 The evidence was also sufficient to sustain Alvarez's conviction pursuant to 18 U.S.C. § 2 for aiding the distribution of heroin on October 26, 1990. "[T]he government need not prove that the defendant was aware of every detail of the impending crime, nor that he be present at, or personally participate in, committing the substantive crime." United States v. Smith, 832 F.2d 1167, 1170 (9th Cir.1987) (citations omitted). Bazan's testimony that Alvarez had told him that he was getting paid to deliver the heroin and Franco's testimony that he saw Alvarez help Rodriguez load the heroin into the car before delivery were sufficient to demonstrate to a rational jury beyond a reasonable doubt that Alvarez aided and abetted the distribution of heroin on October 26, 1990.
 
 
 29
 3. District Court Judge's Statements at the Sentencing Hearing
 
 
 30
 At Alvarez's sentencing hearing, the judge stated, "As I said during the trials, or after the first one, they weren't--or it wasn't the strongest case I've ever seen. I'm not at all sure that--I might have found [Medina and Alvarez] not guilty if the jury had been waived. The jury wasn't waived." Alvarez argues that this statement indicates the judge's belief that the evidence at trial was insufficient to convict Alvarez and that the judge erred in denying his motion for judgment of acquittal under Rule 29 of the Federal Rules of Criminal Procedure. We disagree.
 
 
 31
 The record shows that in ruling on the Rule 29 motion, the judge explained that "[i]t looks to me like it's a pure question for the jury. There is plenty of evidence for me to sustain a verdict. It depends on how the jury takes it. I think I have to deny the Rule 29."
 
 
 32
 D. Arrellano's Ex Post Facto Challenge to Two-Point Increase For Role as Organizer
 
 
 33
 Arrellano challenges the two-point increase in his base offense level for his role as an organizer. He contends that the district court, in sentencing him, violated the ex post facto clause of the United States Constitution by relying on commentary to section 3B1.1 adopted after Arrellano had committed the offense of conviction. Arrellano failed to raise this issue before the district court.
 
 
 34
 Section 3B1.1(c) of the Sentencing Guidelines provides for a two-level increase in a defendant's offense level "[b]ased on the defendant's role in the offense ... [i]f the defendant was an organizer, leader, manager, or supervisor in any criminal activity [that involved less than five participants]." (emphasis added). In 1990, the introductory commentary to Chapter 3 was amended to explain that the "determination of a defendant's role in the offense is to be made on the basis of all conduct within the scope of § 1B1.3 (Relevant Conduct), i.e., all conduct included under § 1B1.3(a)(1)-(4), and not solely on the basis of elements and acts cited in the count of conviction." U.S.S.G. Chapter 3, Part B, Introductory Commentary. The amendment became effective November 1, 1990.
 
 
 35
 Prior to the effective date of the amendment, this circuit had not yet determined the scope of the phrase "role in the offense" as used in section 3B1.1. We had, however, previously held that the defendant's "role in the offense" for purposes of role reduction under section 3B1.2 was to be determined solely on the basis of the defendant's conduct in the offense of conviction. United States v. Zweber, 913 F.2d 705, 708 (9th Cir.1990). In Zweber, we stated in dictum that "[u]nder the explicit language of [provision 3B1.2], the defendant's role in the offense of conviction, not collateral conduct, whether charged or uncharged, is the proper basis for enhancing ... a sentence because of the defendant's role." Id. (emphasis added). Other circuits had similarly concluded prior to the amendment that the sentencing court's inquiry into a defendant's role in the offense under section 3B1.1 was limited solely to the offense of conviction. United States v. Pettit, 903 F.2d 1336, 1340-41 (10th Cir.), cert. denied, 111 S.Ct. 197 (1990); United States v. Tetzlaff, 896 F.2d 1071, 1074-75 (7th Cir.1990); United States v. Williams, 891 F.2d 921, 925-26 (D.C.Cir.1989).
 
 
 36
 Arrellano committed the crime of distributing heroin on October 26, 1990, before the amendment to the commentary became effective. He was sentenced on April 29, 1991. Arrellano argues for the first time on this appeal that the amended text substantively changed the law of this circuit regarding section 3B1.1 and that the district court retroactively applied the amended text of the commentary to him in violation of the ex post facto clause of the Constitution. We have previously affirmed a district court's retroactive application of the amended commentary to enhance a defendant's sentence, even though the defendant had committed the crime for which he was convicted before the amended commentary became effective. United States v. Lillard, 929 F.2d 500, 502-03 (9th Cir.1991). The ex post facto effect of such an application was not discussed in our opinion in Lillard.
 
 
 37
 Because Arrellano did not present this issue to the district court, we decline to reach the question whether applying the 1990 amendment to the commentary to a crime committed before its effective date violates the ex post facto clause. The record before us does not demonstrate whether the district court considered relevant conduct in sentencing Arrellano. Although Arrellano's attorney argued at the sentencing hearing that Arrellano was not an organizer "for this offense, the offense of conviction," defense counsel did not indicate to the court that it was precluded from considering relevant conduct in evaluating Arrellano's leadership role. Arrellano's counsel did not request a finding on this issue. Because it is not clear to us whether the court limited its review of the facts in deciding whether Arrellano was an organizer, we are persuaded that a new sentencing hearing is necessary so that the record will be clear as to the evidence considered by the court on this issue.
 
 
 38
 The sentence imposed on Rodriguez is AFFIRMED. The judgments of conviction as to Medina and Alvarez are AFFIRMED. The sentence imposed upon Arrellano is VACATED. Upon remand, the district court is directed to conduct a new sentencing proceeding and to prepare findings regarding the evidence it considers in ruling on the question whether Arrellano was an organizer.