**FILED**
**United States Court of Appeals**
**Tenth Circuit**

## UNITED STATES COURT OF APPEALS

### FOR THE TENTH CIRCUIT

**February 22, 2023**

**Christopher M. Wolpert**
**Clerk of Court**

_____

ALEX TAYLOR,

    Plaintiff - Appellant,

v.

NATIONAL COLLEGIATE STUDENT
LOAN TRUST, 2007-1,
TRANSWORLD SYSTEMS, INC., EGS
FINANCIAL CARE, INC., f/k/a NCO
FINANCIAL SYSTEMS, INC.,

    Defendants - Appellees.

No. 21-4049
(D.C. No. 2:19-CV-00120-BSJ)
(D. Utah)

_____

### ORDER AND JUDGMENT[*]
_____

Before **HOLMES**, Chief Judge, **PHILLIPS**, and **CARSON**, Circuit Judges.
_____

After Plaintiff Alex Taylor defaulted on a student loan, Defendants sued him

in Utah state court, obtained default judgment, and began garnishing his wages.

Plaintiff responded by suing Defendants. He claimed that Defendants lacked

standing in the state-court action and did not own his loan. He also falsely claimed

he had been a victim of identity theft. The district court granted summary judgment

---

[*] This order and judgment is not binding precedent, except under the doctrines
of law of the case, res judicata, and collateral estoppel. It may be cited, however, for
its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

in Defendants' favor and sanctioned Plaintiff for his false claim.  Plaintiff appeals.

Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

I.

In 2006, Plaintiff Alex Taylor signed a credit agreement with JP Morgan

Chase Bank ("Chase") to borrow money to attend the University of Nevada, Las

Vegas ("UNLV").  Chase approved the loan and issued Plaintiff a $30,000 check.

Plaintiff endorsed and deposited the check, but he never attended UNLV.

Roughly a year later, Chase sold, transferred, and assigned ownership of a

schedule of loans, including Plaintiff's, to an intermediary depositor—National

Collegiate Funding, LLC.  The depositor then sold, transferred, and assigned all of

the loans "scheduled to the March 8, 2007 Pool Supplement" to the National

Collegiate Student Loan Trust 2007-1 ("NCSLT").

In November 2009, Plaintiff's first loan payment came due.  But Plaintiff

made no payment.  He continued to make no payments for nearly a year until Chase

eventually charged off his loan.[1]  Defendant Transworld Systems, Inc. ("TSI") then

entered as the post-default loan servicer—the entity tasked with collecting the

amount due from Plaintiff on behalf of NCSLT—and the successor post-default

servicer to Defendant EGS Financial Care, Inc. ("EGS").

---

[1] "A 'charge-off is a write-off of a delinquent balance as uncollectible.'" Fishback v. HSBC Retail Servs. Inc., 944 F. Supp. 2d 1098, 1101 n. 2 (D.N.M. 2013) (quoting In re Sears, Roebuck and Co. Securities Litig., 291 F. Supp. 2d 722, 724 n. 2 (N.D. Ill. 2003)).

In 2014, NCSLT sued Plaintiff in Utah state court to collect the loan ("2014 lawsuit"). Plaintiff did not respond to the complaint, and in January 2015, the state court entered a default judgment against him for $65,607.76 plus post-judgment interest. The state court then mailed Plaintiff notice of the 2014 lawsuit judgment. Roughly one year after entry of default judgment, Plaintiff moved to dismiss the 2014 lawsuit. The state court denied his motion. Two years later, in 2018, Plaintiff filed a "Reply and Request for a Hearing," claiming that the "originated debt [wa]s fraudulent." Appellant's App. at 1007–09.

TSI, on behalf of NCSLT, began garnishing Plaintiff's wages. In response, Plaintiff sued NCSLT and TSI again in Utah state court, but never served the complaint. Months later, he amended his complaint to add eight causes of action all stemming from an underlying claim that he had been a victim of identity theft and Defendants knew that he did not take out the loan. He also claimed Defendants could not prove they owned the loan and therefore lacked standing to initiate the 2014 lawsuit. Defendants removed the case to the United States District Court for the District of Utah.

As a part of discovery, NCSLT produced copies of Plaintiff's loan, assignment documents, and the Schedule 1 loan excerpt ("Excerpt"). Unsatisfied, Plaintiff moved for disclosure of the *full* schedule. Defendants argued that production of the full schedule was unnecessary because other individuals' sensitive data was irrelevant. Still, Defendants offered to have Bradley Luke—the Director of Operations, Transworld Systems, Inc.—travel to the court to remotely access the

3

electronic file for in camera inspection.  After oral argument, the district court ordered Defendants to produce the schedule's metadata.  Defendants complied. Plaintiff raised no further discovery issue for nearly six months, until filing a second motion to compel one week before the discovery deadline.

In October 2019, Plaintiff sought leave to amend his complaint to add yet another theory.  He argued his loan was discharged in bankruptcy, because a recent Fifth Circuit opinion held that certain student loans could be dischargeable under the bankruptcy code.[2]  So, he contended, the state-court judgment was void.  Defendants responded that this new theory conflicted with Plaintiff's identity-theft theory.  Then, at a hearing on the motion to amend, Plaintiff's counsel admitted that Plaintiff had in fact applied for the loan and received the $30,000 proceeds.  Plaintiff later officially withdrew his identity-theft claims.

In response to this admission, Defendants moved for sanctions against Plaintiff for falsely raising a claim for identity theft.  After a hearing on the issue, the court granted the motion and awarded Defendants $37,725.37—half of their fees incurred. But the district court still declined to dismiss the case.

With this case pending, Defendants and Plaintiff each filed summary-judgment motions.  The district court heard argument and ordered further briefing on Plaintiff's summary judgment motion argument that the Utah Business Trust Registration Act required NCSLT to register.  The court granted Defendants' summary-judgment

---

[2] In re Crocker, 941 F.3d 206 (5th Cir. 2019), as revised (Oct. 22, 2019).

motion, finding NCSLT owned Plaintiff's loan during the 2014 lawsuit. The district court also found NCSLT's loan documents established that Plaintiff incurred a student-loan debt with Chase; Chase sold a pool of loans to NCSLT on March 8, 2007; and the Excerpt established Plaintiff's loan was part of that transaction. Plaintiff appeals.

## II.

Plaintiff argues the district court erred by: (1) granting Defendants' summary judgment motion; (2) not compelling production of discovery on Defendant NCSLT's standing; and (3) sanctioning Plaintiff without notice. We affirm the district court on each issue.

## A.

Plaintiff presents several reasons—based in evidence and standing under the Utah Business Trust Registration Act ("UBTRA")—why the district court erred in granting Defendants' motion for summary judgment. None persuade us.

"We review a summary judgment de novo, applying the same standard that the district court should have applied." Water Pik, Inc. v. Med-Sys., Inc., 726 F.3d 1136, 1143 (10th Cir. 2013). "A party is entitled to summary judgment if, viewing the evidence in the light most favorable to the non-moving party, there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Affliction Holdings, LLC v. Utah Vap or Smoke, LLC, 935 F.3d 1112, 1114 (10th Cir. 2019); see also Fed. R. Civ. P. 56(a). "A factual issue is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving

party.'" Water Pik, Inc., 726 F.3d at 1143 (quoting Sally Beauty Co. v. Beautyco, Inc., 304 F.3d 964, 972 (10th Cir. 2002)). While the party moving for summary judgment bears the burden of showing the lack of a genuine issue of material fact, the moving party need not negate the nonmovant's claim; rather it only needs to show "that there is an absence of evidence to support the nonmoving party's case." Universal Money Ctrs., Inc. v. Am. Tel. & Tel. Co., 22 F.3d 1527, 1529 (10th Cir. 1994) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986)).

1.

Plaintiff first contends the district court relied on incompetent evidence and statements deriving from the Excerpt. He also believes it drew an impermissible inference about the Chase-sent letter dating its loan sale to NCSLT. In doing so, he says, the court violated Federal Rules of Evidence 602, 701, and 1002. We disagree.

Plaintiff argues the Excerpt was inadmissible under the Federal Rules of Evidence. Rule 602 requires a witness have first-hand knowledge of what he or she is testifying about. Fed. R. Evid. 602. Rule 701 allows a lay witness to present testimony. Fed. R. Evid. 701. And Rule 1002 requires a party to present the original "unless these rules or a federal statute provides otherwise." Fed. R. Evid. 1002. Taken together, Plaintiff says these rules prevent NCSLT from both presenting the Excerpt—as it is not the original—and allowing Luke to describe it—because he is not a lay witness with firsthand knowledge of it. But Plaintiff's argument fails.

Contrary to his argument, we see this as an issue under Rule 803(6). At trial, "[t]he scope of Rule 803 poses a question of law; we [would] review the district

6

court's admission of evidence for abuse of discretion." United States v. Hernandez, 913 F.2d 1506, 1512 (10th Cir. 1990) (citing United States v. Pettit, 903 F.2d 1336, 1339 (10th Cir. 1990)).

Rule 803(6) permits admission of hearsay "records of a regularly conducted activity." Fed. R. Evid. 803(6). The record must have been "made at or near the time by—or information transmitted by—someone with knowledge." Id. It must have been "kept in the course of a regularly conducted activity of a business . . . ." Id. And making it must have been "a regular practice of that activity. . . ." Id. The rule also requires a record custodian's testimony to show the conditions for the hearsay exception are present. See id.

But before we analyze this issue under Rule 803(6), we must note that the district court granted a summary judgment motion. It had not ruled on the Excerpt's admissibility at trial. And "[a]t the summary judgment stage, evidence need not be submitted 'in a form that would be admissible at trial,'" so long as "the evidence may ultimately be presented at trial in an admissible form." Argo v. Blue Cross & Blue Shield of Kan., Inc., 452 F.3d 1193, 1199 (10th Cir. 2006) (quoting Celotex Corp., 477 U.S. at 325). An admissible form of the Excerpt exists under Rule 803(6), be it the Excerpt as is or some redacted form of Schedule 1.

The Excerpt came about because the Schedule 1 contained sensitive information outside this case's scope. Federal Rule of Civil Procedure 26(b)(1) provides for "discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . ." NCSLT did

7

not produce Schedule 1 in its entirety because it was almost entirely irrelevant and disproportionate to Plaintiff's needs. It contained thousands of third-party names and corresponding social security numbers, information entirely outside the Plaintiff's needs.

NCSLT did, however, offer Schedule 1 for in-camera review by the district court. After inspection and argument, the district court ordered that NCSLT produce the Excerpt. It did. The Plaintiff's expert witness raised issues about the Excerpt. He claimed that, among other things, the metadata did not tie it back to the full schedule. But the district court still relied on it. It contained Plaintiff's last four digits of his social security number and the same ID number listed on his credit agreement. It also listed Chase as the lender, the total disbursement of $30,000, and disbursement date as December 7, 2006.

The Excerpt contains information derived from Schedule 1. And Schedule 1 is a business record. Chase created it at the time of transfer. Chase's regular business includes the transfer of loans. And making a record such as Schedule 1 is part of that regular activity. Lastly, the rule requires a record custodian's testimony to show the requisite conditions for the hearsay exception are present. Fed. R. Evid. 803(6). Luke is—as the Transworld Systems, Inc., Director of Operations—a records custodian. By the rule's text and against Plaintiff's contention, Luke may testify. Keeping him away would have contravened the rule. Even if the Excerpt itself falls outside of Rule 803(6)'s exception, Schedule 1 was admissible. Thus, the

information contained in the Excerpt would certainly be admissible at trial and the district judge was within his discretion to rely on it.

The district court also could have used other documents to arrive at the same conclusion. Subpoenaed documents from Chase match the Schedule 1 excerpt information. A 2018 Chase letter addressed to Plaintiff states, "American Education Services serviced [Plaintiff's] loan from December 7, 2006, the date of disbursement, through March 8, 2007, when we sold it to National Collegiate Trust." Appellant's App. at 1116. And a Chase database entry includes Plaintiff's name, the last four digits of his social security number, the initial disbursement date of December 7, 2006, and states Chase "[c]losed" and "[t]ransferred off" their system his loan on March 8, 2007. CM/ECF Doc. 91-6. The district court could have reasonably relied on these documents instead of the Excerpt.

But Plaintiff now disputes that closed and transferred off reasonably means that Chase sold the loan to NCSLT. Rather, he contends his loan was in default on January 22, 2007—before the sale to NCSLT—when he failed to enroll at UNLV. The date matters, he claims, because of a third-party agreement between Chase and The Education Resources Institute, Inc. ("TERI"). Under the agreement, TERI, a non-profit, acted as a guarantor on certain loans including Plaintiff's. If he was in default prior to Chase's transfer to NCSLT, he contends TERI—and not NCSLT—received his loan and NCSLT has no standing. But his argument is without merit.

Under the agreement, TERI becomes the Guarantor under only certain circumstances called "Guaranty Events." One relevant circumstance requires 150

9

consecutive days of non-payment before guaranty. Only 91 days passed between disbursement and transfer to NCSLT. Thus, TERI had no guaranty obligation regarding Plaintiff's loan on March 8th. Other documents further support this inference. In Plaintiff's summary-judgment response, he stated he defaulted on June 6, 2007. In addition, a letter from American Educational Services, NCSLT's servicing agent, lists the default date as September 1, 2010. Thus, the reasonable inference of closed and transferred off their system is that Chase transferred the loan to NCSLT.

Plaintiff's evidence-based arguments fail. Nothing here precludes the court's reliance on the Excerpt at summary judgment.

2.

Plaintiff also argues the district court failed to adequately consider Defendants' standing under UBTRA. But this argument misinterprets the Utah statute.[3]

Under Utah Code § 16-15-106, a "business trust registered under this chapter may in its trust name . . . sue" and "subject to the limitations in the declaration of trust," exercise full property rights. Utah Code § 16-15-106(1). Borrowing from

---

[3] The district court characterized this as a legal-capacity issue under Utah Rule of Civil Procedure 9. But, because the Federal Rules of Civil Procedure guide us, we believe the best analysis of this issue is as one of statutory standing. And "[w]e can affirm a lower court's ruling on any grounds adequately supported by the record, even grounds not relied upon by the district court." Elwell v. Byers, 699 F.3d 1208, 1213 (10th Cir. 2012) (citing Dummar v. Lummis, 543 F.3d 614, 618 (10th Cir. 2008)).

Utah's Financial Institutions Act's ("UFIA") definition, a "business trust" is an entity "engaged in a trade or business," created by a declaration of trust, that allows trustees to manage property to benefit persons holding rights in the trust estate. Id. §§ 7-5-l(l)(a); 16-15-102(2). And a business trust cannot bring suit unless it properly registered in Utah. Id. § 16-15-106(2)(a). But "[t]he requirements of this chapter do not apply to . . . an institution authorized to engage in a trust business in another state that is engaged in trust activities in this state solely to fulfill its duties as a trustee of a trust created and administered in another state." Id. § 7-5-1(3)(a).

First, NCSLT belongs within the § 7-5-1(3)(a) exception. NCSLT is authorized to do business in another state, Delaware. It also appeared in Utah solely to fulfill its trustee duties by securing its contractual rights with Plaintiff. Thus, NCSLT meets the exception's criteria and UBTRA standing restrictions do not apply. And the § 7-5-1(3)(a) exception is not even necessary because NCSLT did not engage in business in Utah. UBTRA and UFIA do not define "transacting business." But Utah's Revised Business Corporations Act says that "maintaining, defending, or settling on its own behalf any legal proceeding" does not constitute "transacting business." Utah Code § 16-10a-1501. NCSLT came to Utah to maintain a lawsuit against Plaintiff and nothing more. So it is not transacting business in the state and thus falls completely outside UBTRA's reach. Defendants have standing.

B.

Plaintiff next contends the district court denied discovery on key issues, which left him unable to prove NCSLT lacked standing. "We review the denial of

11

Plaintiff's motion to compel discovery for an abuse of discretion." Punt v. Kelly Servs., 862 F.3d 1040, 1046 (10th Cir. 2017). "An abuse of discretion occurs when a judicial determination is arbitrary, capricious or whimsical." United States v. Shumway, 112 F.3d 1413, 1419 (10th Cir. 1997) (quoting United States v. Wright, 826 F.2d 938, 943 (10th Cir. 1987)). "We will not overturn a discretionary judgment by the trial court where it falls within the 'bounds of permissible choice in the circumstances.'" Id. (quoting United States v. Dorrough, 84 F.3d 1309, 1311 (10th Cir. 1996)).

Plaintiff asserts four interrelated discovery errors. First, Plaintiff argues the district court permitted Luke to testify despite Defendants' noncompliance with Rules 37(c) and 26(a). Plaintiff argues the district court also ignored the Rule 26(a) Woodworker's Supply, Inc. v. Principal Mutual Life Insurance Co., 170 F.3d 985, 993 (10th Cir. 1999), factors.[4] Plaintiff then claims the noncompliance left him unable to conduct discovery on the Luke affidavit's assertions. And finally, Plaintiff asserts that the district court should have compelled Defendants to respond to various discovery requests and objections to portions of Luke's affidavit. We disagree with each.

Under Federal Rule of Civil Procedure 37(c)(1), "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e)," it may not use that

---

[4] The factors consider "(1) the prejudice or surprise to the party against whom the testimony is offered; (2) the ability of the party to cure the prejudice; (3) the extent to which introducing such testimony would disrupt the trial; and (4) the moving party's bad faith or willfulness." Woodworker's Supply, 170 F.3d at 993.

information or witness in later proceedings "unless the failure was substantially justified or is harmless." Rule 26(a) requires initial disclosures of the individuals likely to have discoverable information, the subject of that information, and tangible things that the disclosing party possesses. Fed. R. Civ. P. 26(a)(1)(A)(i)–(ii).

Defendants' initial disclosures complied with Rule 26(a): they identified Luke by name, job title, employer, his employer's relationship to NCSLT, and the knowledge he possessed related to this action. Defendants also produced the account documents referenced in Luke's affidavit. Luke also offered to testify about the Excerpt. The disclosures and offer satisfy Rules 26 and 37. Because no violation occurred, the district had no need to consider the Woodworker's Supply factors. And contrary to Plaintiff's contention, he could have performed adequate discovery related to Luke because the Rule 26 disclosures set the parameters of his potential testimony. But he chose not to.

Last, Plaintiff asserts that the district court should have compelled Defendants to respond to various discovery requests and objections. But Plaintiff first raised these issues in response to Defendants' Motion for Summary Judgment. They were not the subject of a previous discovery motion. Instead, he merely objected—in his second motion to compel—that Defendants wrongfully refused his requests for production and interrogatories. Because Plaintiff did not properly raise these specific objections before the district court, he cannot raise them now. See Ecclesiastes 9:10-11-12, Inc. v. LMC Holding Co., 497 F.3d 1135, 1141 (10th Cir. 2007) ("This Court will not consider a new theory advanced for the first time as an appellate issue. . . .").

13

For these reasons, the district court acted within its discretion in each discovery ruling.

C.

Plaintiff argues the district court denied him due process when it sanctioned him without notice. He also claims the district court erred in imposing sanctions. We reject this position as well.

"We review the imposition of an attorney-fee sanction, whether rooted in statute, rule, or a court's inherent authority, only for an abuse of discretion." Farmer v. Banco Popular of N. Am., 791 F.3d 1246, 1256 (10th Cir. 2015). "A district court abuses its discretion when it (1) fails to exercise meaningful discretion, such as acting arbitrarily or not at all, (2) commits an error of law, such as applying an incorrect legal standard or misapplying the correct legal standard, or (3) relies on clearly erroneous factual findings." Id.

The district court did not violate Plaintiff's due process rights when it sanctioned him under its inherent authority. Due process requires that "notice must include not only the 'conduct alleged to be sanctionable,' but also 'the standard by which that conduct [would] be assessed.'" United States v. Melot, 768 F.3d 1082, 1085 (10th Cir. 2014) (quoting Ted Lapidus, S.A. v. Vann, 112 F.3d 91, 97 (2d Cir. 1997)).

Here, the Defendants moved for sanctions based on Plaintiff's alleged bad-faith conduct, the essential ingredient to sanctions under both Utah Code

§ 78B-5-825 and the court's inherent authority.[5][6]  They cited only the Utah statute, but the motion notified Plaintiff that bad faith was the standard by which the court would review his alleged sanctionable conduct.  And in his response to this motion, Plaintiff cited Roadway Express, Inc. v. Piper, 447 U.S. 752, 767 (1980), and argued that the court should not use its inherent authority to sanction.  As Plaintiff's response demonstrates, the notice made him aware that the court might rely on its inherent power in addressing sanctions.  Thus, the district court did not violate Plaintiff's due process rights by sanctioning him based on its inherent authority.

Second, Plaintiff argues the district court erred by sua sponte relying on its inherent authority rather than statutory remedies.  But the Court in Chambers v. NASCO, Inc., 501 U.S. 32 (1991), held otherwise.  Ordinarily, a court should rely on statutory sanctions.  Id. at 50.  A court may, however, sanction parties under its inherent authority even when "that conduct could also be sanctioned under the statute or the Rules."  Id.  And "[i]f in the informed discretion of the court, neither the statute nor the Rules are up to the task, the court may safely rely on its inherent power."  Id.

---

[5] "In civil actions, the court shall award reasonable attorney fees to a prevailing party if the court determines that the action or defense to the action was without merit and not brought or asserted in good faith . . . ." Utah Code § 78B-5-825(1).

[6] The "invocation of the inherent power [to sanction] would require a finding of bad faith." Chambers v. NASCO, Inc., 501 U.S. 32, 49 (1991) (citing Roadway Exp., Inc. v. Piper, 447 U.S. 752, 767 (1980)).

Availing itself of informed discretion, the district court considered and determined inadequate the available statutory and rules-based sanctioning mechanisms. Only then did it resort to its inherent authority. It first considered 28 U.S.C. § 1927, which permits sanctions for attorney conduct that "multiplies the proceedings in any case unreasonably and vexatiously." But Plaintiff's false claims did not multiply proceedings. It merely created a claim where one did not exist. The district court next explained that Utah Code §§ 78B-5-825 and 78B-5-826 were inappropriate because in diversity cases, fees based on a litigant's bad-faith conduct are procedural. See Chieftain Royalty Co. v. Enervest Energy Institutional Fund XIII-A, L.P., 888 F.3d 455, 460–61 (10th Cir. 2017). And under the *Erie* doctrine, federal rules—not state statutes—govern procedural fees. Id. Thus, the court found that neither § 1927 nor Utah state law offered relief for Plaintiff's conduct.

The district court similarly found Federal Rule of Civil Procedure 11 insufficient. Rule 11 permits the court on its own initiative to sanction a party, but it must issue a show-cause order to the party it intends to sanction. Fed. R. Civ. P. 11(c)(3). The district court did not do that here. Instead, the district court was responding to Defendants' Motion for Sanctions. Rule 11 also directs penalty payment to the court, not Defendants. Given that Defendants bore the burden and cost of defending Plaintiff's false claims, the district court determined that *Defendants* were the ones who deserved compensation. For these reasons, the district court also determined Rule 11 was an inadequate sanctioning mechanism. The Plaintiff here had notice. And under the "informed discretion of the court, neither the statute nor the Rules [were] up to the task,"

16

so it could "safely rely on its inherent power." <u>Chambers</u>, 501 U.S. at 50. And it did. The district court acted within its discretion by relying on its inherent authority to award sanctions. We AFFIRM the district court's $37,725.37 sanctions award to Defendant.

Entered for the Court


Joel M. Carson III
Circuit Judge